RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0090P (6th Cir.)
File Name: 03a0090p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

BURT LANCASTER,
    *Petitioner-Appellee,*

    *v.*          No. 01-2498

STANLEY ADAMS, Warden,
    *Respondent-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 00-70691—Avern Cohn, Senior District Judge.

Argued: December 5, 2002

Decided and Filed: March 26, 2003

Before: COLE and CLAY, Circuit Judges;
BERTELSMAN, District Judge.*

———————

## COUNSEL

**ARGUED:** Brad H. Beaver, OFFICE OF THE ATTORNEY
GENERAL, HABEAS CORPUS DIVISION, Lansing,
Michigan, for Appellant. Kenneth M. Mogill, MOGILL,

———————

* The Honorable William O. Bertelsman, Senior United States District
Judge for the Eastern District of Kentucky, sitting by designation.

1

POSNER & COHEN, Lake Orion, Michigan, for Appellee.
**ON BRIEF:** Brad H. Beaver, OFFICE OF THE
ATTORNEY GENERAL, HABEAS CORPUS DIVISION,
Lansing, Michigan, for Appellant. Kenneth M. Mogill,
MOGILL, POSNER & COHEN, Lake Orion, Michigan, for
Appellee.

———————

## OPINION

———————

R. GUY COLE, JR., Circuit Judge. Respondent-Appellant
Stanley Adams appeals the district court's order conditionally
granting a writ of habeas corpus pursuant to 28 U.S.C. § 2254
on behalf of Petitioner-Appellee Burt R. Lancaster. On
appeal, Respondent argues that the district court erred in
concluding that the decisions of the Michigan state courts
were contrary to and unreasonable applications of United
States Supreme Court precedent as set forth in *Batson v.
Kentucky*, 476 U.S. 79 (1986) and *Hernandez v. New York*,
500 U.S. 352 (1991). Although Petitioner has not
cross-appealed and the district court did not issue a certificate
of appealability, in his brief Petitioner argues that the
decisions of the Michigan state courts were contrary to or
unreasonable applications of *Doyle v. Ohio*, 426 U.S. 610
(1976) and other cases—an issue that the district court found
to have been procedurally defaulted. For the reasons stated
below, we AFFIRM the judgment of the district court.

### I. Background

Petitioner was charged in Michigan state court with
violating Michigan Compiled Laws Annotated § 750.316,
first-degree premeditated murder, and Michigan Compiled
Laws Annotated § 750.227, possession of a firearm during the
commission of a felony. The charges arose out of an
April 23, 1993 incident in which Petitioner shot and killed his
girlfriend, Toni King, in the parking lot of a Southfield,
Michigan shopping plaza. At trial, Petitioner did not dispute
that he had killed King, but raised insanity and diminished

capacity defenses and argued that the murder was not premeditated. A jury convicted Petitioner of both charges. Petitioner was sentenced to serve life in prison without parole for the murder conviction to be followed by a sentence of an additional two years imprisonment for the firearms conviction.

On June 23, 1998, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished per curiam decision. *See People v. Lancaster*, No. 184033 (Mich. Ct. App. June 23, 1998). On February 25, 1999, the Michigan Supreme Court denied Petitioner's application for leave to appeal the decision of the Michigan Court of Appeals in a brief order. *See People v. Lancaster*, No. 112594 (Mich. Feb. 25, 1999).

On February 8, 2000, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition") in the United States District Court for the Eastern District of Michigan. The Petition requested relief upon six grounds, including the two that are the subject of this appeal: (1) whether the decisions of the Michigan state courts finding that Petitioner had not satisfied his burden of proving that the prosecutor purposefully discriminated in exercising his peremptory challenges was contrary to or an unreasonable application of Supreme Court precedent as set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986) and its progeny; and (2) whether the Michigan state appellate court's decision that Petitioner was not denied his Fifth Amendment right to remain silent and his Fourteenth Amendment right to due process of law when the prosecutor elicited testimony that he had remained silent during custodial questioning on the advice of counsel was contrary to or an unreasonable application of Supreme Court precedent as set forth in *Doyle v. Ohio*, 426 U.S. 610 (1976) and other cases.

In a September 25, 2001 decision, the district court conditionally granted the Petition, finding Petitioner's *Batson* claim meritorious. The district court concluded that Petitioner's *Doyle* claim had been procedurally defaulted and

denied his other claims. Respondent now appeals the district court's decision and concomitant judgment granting Petitioner relief pursuant to 28 U.S.C. § 2254 on the *Batson* claim. As mentioned above, though Petitioner seeks to inject the *Doyle* claim into this appeal, he has neither lodged a cross-appeal nor obtained a certificate of appealability from the district court on this issue. The district court stayed the grant of the writ of habeas corpus pending this appeal.

## II.   Standard of Review

This Court reviews a district court's decision to grant habeas corpus relief *de novo*. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). We review the district court's findings of fact for clear error. *Id.*; *Carson v. Burke*, 178 F.3d 434, 436 (6th Cir. 1999).

Because the Petition was filed after April 24, 1996, the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of the decisions of the state trial and appellate courts is governed by AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 323 (1997) (holding AEDPA applicable to petition filed on or after AEDPA's effective date); *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

In AEDPA, Congress provided that:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
. . . resulted in a decision that was contrary to, or an involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d)(1).

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court interpreted the statutory standard for reviewing a petition for writ of habeas corpus. In particular, the Court explained that a state court decision is "contrary to" the Supreme Court's precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the result reached by the Supreme Court]." *Williams*, 529 U.S. at 405; *see Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

A state court decision may be an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see Lewis*, 307 F.3d at 418 (discussing standard).

In reviewing Petitioner's *Batson* claim, which presents a mixed question of law and fact, our review necessarily focuses on the reasonableness of the decisions of the state courts—that is, whether those decisions constituted an unreasonable application of Supreme Court precedent. *See Harpster v. Ohio*, 128 F.3d 322, 327 (6th Cir. 1997) (suggesting that mixed questions of law and fact are reviewed under the "unreasonable application" prong). We are mindful, however, that the question of "[w]hether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact." *Hernandez*, 500 U.S. at 367. Under AEDPA, "[p]rimary or historical facts found by state courts are 'presumed correct and are rebuttable only by clear and convincing evidence.'" *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000) (quoting *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999)); *see* 28 U.S.C. § 2254(e)(1) ("[A]

determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").[1]

### III. *Batson v. Kentucky* Claim

#### A. Relevant Facts

On November 7, 1994, the Michigan trial court conducted jury selection for Petitioner's trial. After one African-American, Michael Hurd, was selected and another African-American, Alvin Mitchell, was excused for cause, the following colloquy took place between the trial court and another potential juror, Jackie Bowden, who is also African-American.

The Court: Thank you. With regard to Mr. Bowden. How are you today, sir?

Juror Bowden: All right.

The Court: Where do you work, sir?

Juror Bowden: I drive a semi-truck for a flea market.

The Court: For?

---

[1] This Court has stated that "[a] district court's ruling on whether the exercise of a peremptory challenge violates equal protection is entitled to 'great deference,' and we may not disturb its judgment unless it is clearly erroneous." *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (citing *United States v. Buchanan*, 213 F.3d 302, 308-09 (6th Cir. 2000)); *see United States v. Bartholomew*, 310 F.3d 912, 919 (6th Cir. 2001); *United States v. Copeland*, --F.3d--, 2003 WL 431897 (6th Cir. Feb. 25, 2003). While this standard is appropriate for direct appellate review, *see Hernandez*, 500 U.S. at 369, the standard must be modified in the context of a § 2254 petition to give credence to § 2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *cf. Purkett v. Elem*, 514 U.S. 765, 769 (1995) (discussing pre-AEDPA standard under § 2254(d)(8)).

Juror Bowden: A western flea market.

The Court: Okay. And where does your wife work?

Juror Bowden: (inaudible)

The Court: She worked as a secretary?

Juror Bowden: (inaudible)

The Court: Where did---where?

Juror Bowden: She was a receptionist at---

The Court: Okay. What kind of outfit was it?

Juror Bowden: It was like a motel.

The Court: Okay. Now, are you familiar with the scene of the alleged crime?

Juror Bowden: Um, yes.

The Court: Okay. Do you know any of the individuals here?

Juror Bowden: Um, no.

The Court: Can you be fair. [sic]

Juror Bowden: Yea, I can be fair.

The Court: Would you want you as a juror?

Juror Bowden: Um, I think so.

The Court: That's an underwhelming response. We'll delve into that. Can you be fair?

Juror Bowden: Yea.

The Court: Are you honest?

Juror Bowden: Yes, I'm honest.

The Court: Can you listen to both sides?

Juror Bowden: (no verbal response)

The Court: If worse comes---if the prosecution proves their case beyond a reasonable doubt, based upon the law I give you, can you find the defendant guilty?

Juror Bowden: (no verbal response)

The Court: To the best of your ability can you assure me that you can find him guilty?

Juror Bowden: Yes.

The Court: If, however, the prosecution does not meet it's [sic] burden, can you find the defendant not guilty?

Juror Bowden: Yes.

The Court: Can you sit in judgment of a fellow human being?

Juror Bowden: Yes.

The Court: Can you swear to me, swear to the defendant, and swear to the prosecution that you can be fair?

Juror Bowden: Yes.

The Court: Can you swear and assure to us that you'll listen to the testimony and make your decision only on the facts and evidence and the law that I give to you?

Juror Bowden: I swear.

The Court: Can you commit to us that your decision will be based only on the facts and not because you like somebody or you don't like somebody?

Juror Bowden: Yes.

The Court: That's what it's all about. Any questions?

At the conclusion of this colloquy, neither the prosecutor nor defense counsel had any questions for Bowden.

Shortly after this colloquy, the prosecutor simultaneously exercised three peremptory challenges, striking the juror in seat two, Roanne Hassinger, the juror in seat twelve, Mr. Bednaris, and Bowden, who was in seat nine. Hassinger and Bednaris are not African-American. The trial court immediately excused Hassinger and Bednaris, but told Bowden to remain in his seat and called for a bench conference. After a two-minute bench conference, the transcript of which is not in the record before this Court, the trial court took a ten-minute recess.

When court returned to session, the trial court announced that a *Batson* challenge had been made in connection with the prosecutor's challenge to Bowden, which was based on the prosecution's contention that Bowden's responses were not "strong enough" to satisfy the prosecution.

At the request of the trial court, the prosecution then argued that it had a basis independent of race for striking Bowden. The prosecution first pointed out that three African-American men had already been called to sit on the jury: Mitchell, whom the trial court excused for cause; Hurd, who was still on the jury; and Bowden. Second, the prosecutor stated that both he and an investigator sitting with him at counsel table, Detective Phillips, who the prosecutor made clear is African-American, agreed that Bowden was not favorable to the prosecution. They had reached this conclusion, the prosecutor explained, based on Bowden's responses, demeanor, attitude, tone, and temperament. Finally, the prosecution argued that the fact that "there were . . . three minorities called in this case and two of them remain on the jury does not demonstrate that there is a prima facie showing of exclusion on the basis of race."

In response to the prosecution's arguments, the trial court voiced concern about the exclusion of Bowden: "I understand that, but once he is excluded there will be only one African-American on that panel . . . I understand that. I understand---it's the reality of it though . . . ." Counsel for Petitioner then echoed this sentiment, agreeing that, as a practical matter, the exclusion of Bowden may result in no African-Americans serving on the jury. Petitioner's counsel then argued that Bowden's responses indicated that he could be fair and, therefore, that there existed no reasonable basis for striking Bowden. After this argument, the trial court rejected the prosecution's proffered reasons for the strike as pretextual and ruled that the prosecution had purposefully discriminated on the basis of race by attempting to strike Bowden.

The trial court resumed juror voir dire. Approximately thirty minutes later, after the trial court had seated another African-American, Keith Webb, and three other jurors, who were not African-Americans, the prosecution requested a bench conference. After the minute-long bench conference, the transcript of which is not in the record, the trial court announced: "Mr. Bowden, I'm going to ask that you go down to the jury office. Thank you very much. Okay. Next please?"

The following morning, the trial court attempted to describe the ruling it had made on the previous day. In particular, the trial court explained that, after the prosecution's initial attempt to strike Bowden, the trial court had not been satisfied by the prosecution's explanation that the strike was based on Bowden's responses during voir dire and the prosecution's belief that Bowden was not favorable to the prosecution. However, as voir dire continued, the trial court believed the government's subsequent conduct lent credibility to its earlier explanation of its attempt to strike Bowden. In particular, the trial court focused on the fact that, subsequent to its initial decision, another African-American, Webb, had been seated without objection by the prosecution. Thus, the trial court explained, it had reconsidered its opinion based on this

subsequent voir dire and concluded that the prosecution's strike of Bowden had, in fact, been legitimate.

On appeal, the Michigan Court of Appeals found, without mention of any Supreme Court decision, that Petitioner had not made a prima facie showing of purposeful discrimination and, therefore, that there was no error in the trial court's ruling that the prosecutor's use of a peremptory challenge against Bowden had been constitutional. *See People v. Lancaster*, No. 184033, at 2 (Mich. Ct. App. June 23, 1998).

## B. Legal Standard

It is clearly established that a prosecutor may not exercise his peremptory challenges to exclude a potential juror on the basis of race. In *Batson v. Kentucky*, 476 U.S. 79, 96 (1986), the Supreme Court articulated a three-step analysis to be applied to an Equal Protection Clause claim that purposeful discrimination occurred in the selection of the petit jury based solely on the prosecutor's exercise of his peremptory challenges at trial. *See Bartholomew*, 310 F.3d at 919. First, the defendant must establish a prima facie case of racial discrimination. *See Copeland*, 2003 WL 431897, at *10. This requires an initial showing that "the defendant . . . is a member of a cognizable racial group . . . and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." *Batson*, 476 U.S. at 96 (citation omitted). "[T]he defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Id.* (quoting *Avery v. Georgia*, 345 U.S. 559, 562 (1953)). Ultimately, the defendant, relying on this presumption and other facts, must "raise an inference that the prosecutor used [the practice of peremptory challenges] to exclude the veniremen from the petit jury on account of their race." *Id.*

Second, once the defendant has raised the necessary inference, "the burden shifts to the state to come forward with a neutral explanation for challenging [potential] jurors." *Id.*

at 97. "The government is not required to persuade the court that its reasons for dismissing the juror were well-founded; rather it need only demonstrate that its reasons were race-neutral." *Copeland*, 2003 WL 431897, at *10. More specifically,

The second step of this process does not demand an explanation that is persuasive or even plausible. 'At this . . . step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'

*Purkett*, 514 U.S. at 767-68 (quoting *Hernandez*, 500 U.S. at 360).

Third, the party opposing the strike must demonstrate that the prosecutor's purported explanation is merely a pretext for racial motivation. *See McCurdy*, 240 F.3d at 521 (describing *Batson* test). Ultimately, the court must determine "whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. In making this determination, the court presumes that the facially valid reasons proffered by the prosecution are true. *Id.* at 359-60. Racially discriminatory purpose or intent must be affirmatively shown by the opponent of the strike. *Id.* at 360. The ultimate burden of persuasion always remains with the opponent of the strike. *See United States v. McFerron*, 163 F.3d 952, 955 (6th Cir. 1998).

## C. Analysis

Respondent argues that the district court erred in finding that the decisions of the Michigan trial and appellate courts were contrary to and unreasonable applications of clearly established Supreme Court precedent. The Michigan trial court initially found that the prosecutor's challenge to juror Bowden was improperly based upon purposeful discrimination, but then, upon reconsideration, the trial court found the challenge constitutional. The Michigan appellate court affirmed this finding on another ground—that Petitioner

had failed to establish a prima facie case of discrimination. The focus of our review, as explained above, is on whether the decisions of these state courts were unreasonable applications of Supreme Court precedent as set out in *Batson* and its progeny, including, in particular, *Hernandez*, which held that the question of whether a prima facie case has been established becomes moot once a court rules on the ultimate question under *Batson* of whether there was purposeful discrimination.

At oral argument, Respondent conceded that the Michigan trial court erred to the extent that it relied on the fact that the prosecutor did not strike Webb in reversing itself and finding that the prosecutor did not act with a discriminatory purpose. However, Respondent maintains that the district court improperly credited the Michigan trial court's initial finding of discriminatory purpose with the presumption of correctness under § 2254(e)(1) instead of crediting the Michigan trial court's subsequent finding that the prosecutor's race-neutral explanation was credible. Respondent also argues that, although the reasoning underlying the decision of the Michigan Court of Appeals was contrary to the Supreme Court's decision in *Hernandez*, the writ should not have been granted because the Michigan Court of Appeals reached the proper result.

Petitioner responds that the district court was correct when it found that the Michigan trial court erred. Petitioner claims that the district court properly considered the totality of the circumstances, including the trial judge's comments and actions over a two-day period. Petitioner also argues that because a *Batson* error is structural, the distinction Respondent draws between the Michigan Court of Appeals' application of *Batson* and its ultimate conclusion is irrelevant. For the reasons that follow, we agree.

The trial court's factual findings made in support of its ultimate ruling that Petitioner failed to establish a *Batson* violation with regard to Bowden are, at their core, based on nothing more than the prosecution's decision not to raise a

peremptory challenge to a subsequently selected African-American venire member, thereby permitting him to remain on the jury. Indeed, the trial court's explanation for changing its previous finding that Petitioner had demonstrated that the prosecutor had impermissibly challenged Bowden on the basis of race was based on the prosecution's subsequent examination of Webb, and the court's conclusion that the prosecutor's conduct during this examination somehow rendered the challenge to Bowden "more credib[le]." These findings are short-sighted and fly in the face of the spirit and purpose of *Batson*.

The very foundation upon which *Batson* rests is the unquestioned premise that while "a defendant has no right to a petit jury composed in whole or in part of persons of his own race[,] . . . the defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Batson*, 476 U.S. at 85-86 (internal quotations, citations, and footnote omitted). Thus, without more, the prosecutor's decision to select a subsequent African-American juror from the venire does nothing to cure the wrong committed under *Batson* in excluding Bowden because of his race. Where purposeful discrimination has occurred, to conclude that the subsequent selection of an African-American juror can somehow purge the taint of a prosecutor's impermissible use of a peremptory strike to exclude a venire member on the basis of race confounds the central teachings of *Batson*. Recently, this Court reached precisely this conclusion when we rejected the proposition that "the failure to exclude one member of a protected class is sufficient to insulate the unlawful exclusion of others." *United States v. Harris*, 192 F.3d 580, 587 (6th Cir. 1999).[2]

---

[2]Indeed, on direct review or on pre-AEDPA habeas review, this Court and our sister circuits have held that the presence of one or more African-American venire members on the jury, standing alone, does nothing to preclude a valid claim under *Batson*. *See Harris*, 192 F.3d at 587; *Jones v. Ryan*, 987 F.2d 960, 971 (3d Cir. 1993) ("Although one black person was ultimately empaneled, the mere presence of a single black on the jury would not necessarily prevent a finding of a *prima facie*

We therefore find the Michigan trial court's findings and conclusion in this regard to be an unreasonable application of *Batson*, considering that the trial court reconsidered and reversed its initial conclusion that the prosecution had discriminated in striking Bowden solely based on the subsequent seating of another African-American venire member.

The decision of the Michigan Court of Appeals to affirm the trial court was an unreasonable application of the Supreme Court's decisions in *Batson* and *Hernandez*. The failure to identify any precedent from the United States Supreme Court in rendering its decision is not the fatal flaw in that court's decision. *See Early v. Packer*, 123 S. Ct. 362, 365 (2002) ("Avoiding the[] pitfalls [of being "contrary to" or an "unreasonable application of" Supreme Court precedent] does not require citation of our cases—indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Rather, it is the Michigan Court of Appeals's finding that the Petitioner failed to establish a prima facie case of discrimination that renders the court's decision unreasonable under Supreme Court precedent. The Supreme Court made

case." (citation and internal quotation marks omitted)); *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir. 1987) ("[W]e emphasize that under *Batson*, the striking of a single black juror for racial reasons violates the equal protection clause, even though other black jurors are seated, and even when there are valid reasons for the striking of some black jurors."); *United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986) (same). In addition, although the decisions of this Court may be interpreted to allow consideration of the ultimate composition of the jury in reviewing a *Batson* claim, see *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996) and *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1522 (6th Cir. 1988), these cases in no way may be interpreted as standing for the proposition that the presence of an African-American jury member is sufficient to justify the prosecution's discriminatory strike of another African-American venire member. *See Harris*, 192 F.3d at 587 n.1 ("Both *Tucker* and *Sangineto-Miranda* discuss a number of relevant factors, and neither offers support for the conclusion that the failure to exclude one member of a protected class is sufficient to insulate the unlawful exclusion of others.").

clear in *Hernandez* that "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court had ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." 500 U.S. at 359. Accordingly, because the trial court here had ruled on the ultimate question under *Batson*--whether Petitioner had established intentional discrimination--when it concluded that Petitioner had not demonstrated that the reasons for the strike of Bowden proffered by the prosecution were pretextual, the Michigan Court of Appeals acted unreasonably under Supreme Court precedent set out in *Hernandez* when it rested its holding on an issue that had become moot.

We, therefore, hold that the district court did not err in concluding that the decisions of the Michigan state courts were an unreasonable application of Supreme Court precedent under *Batson* and *Hernandez*, and in granting Petitioner's application for writ of habeas corpus.

### IV.  *Doyle v. Ohio* Claim

### A.  Relevant Facts

At trial, during the prosecutor's direct examination of Michael Cischke, the officer who interrogated Petitioner following his arrest, the following exchange took place.

Mr. Walton: . . . In addition to collecting this physical evidence, you also had the opportunity to speak with the defendant, correct?

Mr. Cischke: Yes.

Mr. Walton: You advised him of his Constitutional Rights?

Mr. Cischke: Yes.

Mr. Walton: Did he give you a statement of the events.

Mr. Cischke: No.

Mr. Walton: Did he give you any statements?

Mr. Cischke: No.

Mr. Walton: While in your custody did he make any comments to you?

Mr. Cischke: Yes, he did.

Mr. Walton: Do you recall the nature of those comments?

Mr. Cischke: They had to do with the fact that his attorney advised him not to say anything, to take the Fifth. It had to do with the fact that he---he didn't want to talk to us or he refused to talk to us. We tried to talk to him, but he asked us--we asked him if he would be---whether or not he was going to take his attorney's advise and---and remain silent and he didn't answer that question. He did become angry. We tried to make him more comfortable by taking off the set of handcuffs. He advised us against doing that. At one point he even tipped over the table that we were using in the interview room, um, for whatever reasons. He was frustrated or angry or whatever.

The record does not include the transcript of the discussion that followed this exchange. However, it is undisputed that Petitioner's trial counsel did not object to this line of questioning.

On appeal, the Michigan Court of Appeals noted that to the extent the prosecutor improperly introduced evidence that Petitioner exercised his right to remain silent after being advised of his *Miranda* rights, no objection to this evidence was made in the trial court and, therefore, this claim was not preserved for appeal. *See People v. Lancaster*, No. 184033, at 2 (Mich. Ct. App. June 23, 1998). Alternatively, the Michigan Court of Appeals found that any error that did result

was harmless because the prosecutor elicited the allegedly improper testimony only once and did not raise it in his closing, the defendant elicited the same testimony from another witness, and the evidence was, in any event, not relevant to the central issue in the case—whether Petitioner was insane. *Id.* In rendering its decision, the Michigan Court of Appeals did not cite to any Supreme Court precedent.

Petitioner has not filed a notice of appeal with respect to the *Doyle* issue, *see* FED. R. APP. P. 22 (b)(1), nor has he obtained a certificate of appealability from the district court or this Court, *see* 28 U.S.C. § 2253(c)(1); FED. R. APP. P. 22 (b)(1), (2); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).[3]

## B. Legal Standard

Because only claims adjudicated on the merits in state court proceedings are cognizable on habeas review, this Court generally may not review claims that were not substantively decided by state courts.

When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

*Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)), *cert. denied*, 532 U.S. 989 (2001). "A petitioner may avoid this procedural

---

[3] We decline Respondent's invitation to establish a rule of law that, to preserve for appeal an issue decided adversely to an otherwise-successful habeas petitioner, the petitioner must lodge a cross-appeal. This Court has not previously addressed this issue and there is little authority to support such a rule.

default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case." *Id.* at 550 (citing *Sykes*, 433 U.S. at 87, 90-91).

This Court applies a four-factor test to determine if a claim has been procedurally defaulted:

> First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. Second, the court must decide whether the state courts actually enforced its procedural sanction. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72 . . . (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Greer v. Mitchell*, 264 F.3d 663, 672-73 (6th Cir. 2001) (internal citations omitted), *cert. denied*, 533 U.S. 940 (2002); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) (establishing standard for reviewing whether an issue has been procedurally defaulted).

## C. Analysis

The district court found Petitioner's *Doyle* claim to have been procedurally defaulted. *See Lancaster v. Adams*, No. 00-CV-70691-DT, at 10 (E.D. Mich. Sept. 25, 2001). This finding was based on the ruling of the Michigan Court of Appeals that the issue had "not been preserved for appeal due to defendant's failure to object below." *Id.* Alternatively, the Michigan Court of Appeals found that, even assuming that

Petitioner was correct "that the prosecutor only elicited the allegedly improper testimony once and did not raise it in closing argument, that defendant elicited the same testimony from another witness, and that the evidence was irrelevant to the issue of sanity," any error that occurred was harmless. *Id.*

Petitioner has not demonstrated that he is entitled to review of the *Doyle* claim under the applicable standard. First, Michigan has a contemporaneous objection rule. *See People v. Schutte*, 613 N.W.2d 370, 377 (Mich. Ct. App. 2000) ("Appellate review of allegedly improper conduct by the prosecutor is precluded where the defendant fails to timely and specifically object; this Court will only review the defendant's claim for plain error."). This rule applies in this case. The Michigan Court of Appeals found that Petitioner did not comply with this rule and that no plain error occurred. Second, Michigan courts enforce this rule. *See, e.g., id.* Third, this was an "adequate and independent" ground on which Michigan may rely to foreclose review of Petitioner's *Doyle* claim. There are significant state interests in requiring contemporaneous objections to be made to *Doyle* errors. *Cf. Lee v. Kemna*, 534 U.S. 362, 377 (2002) ("The State's contemporaneous objection rule, we observed, 'serves the State's important interest in ensuring that counsel do their part in preventing trial courts from providing juries with erroneous instructions.'" (quoting *Osborne v. Ohio*, 495 U.S. 103, 123 (1990))).

Accordingly, under the fourth prong of the applicable standard, Petitioner must show cause for this procedural error and that he was prejudiced by such error. Petitioner argues that the failure to object is inconsequential because an instruction to the jury could not have cured the error. Nonetheless, Petitioner claims, as he did before the Michigan Court of Appeals, that the cause for his not raising this issue was that his trial counsel was ineffective. Moreover, Petitioner argues that the *Doyle* error caused him actual prejudice and was not harmless, contrary to the findings of the Michigan Court of Appeals.

The Michigan Court of Appeals found that Petitioner's ineffective-assistance-of-counsel claim had not been raised in the trial court and limited its review to "mistakes apparent on the record." *See People v. Lancaster*, No. 184033, at 2 (Mich. Ct. App. June 23, 1998).　Although the district court addressed the merits of Petitioner's claim that his trial counsel's ineffectiveness was the cause of his failure to raise the *Doyle* claim in the Michigan trial court, the district court noted preliminarily that, to the extent that Petitioner procedurally defaulted this ineffective-assistance claim in state court, he may not rely on it to show "cause" for the procedural default of his *Doyle* claim. *Id.*　We agree.

The Supreme Court recently held "that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted [although] that procedural default may . . . itself be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to that claim." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).　Because Petitioner's ineffective-assistance-of-counsel claim is procedurally defaulted, Petitioner must show cause and prejudice for that default in order to rely on this claim to establish cause for procedurally defaulting with respect to the *Doyle* claim.　Petitioner has failed to establish the necessary cause and prejudice with respect to his ineffective-assistance claim.　Finally, no miscarriage of justice will result from our failure to address the merits of Petitioner's procedurally defaulted *Doyle* claim.

## V.  Conclusion

For the reasons stated above, we AFFIRM the judgment of the district court granting the Petition.