KAREN NELSON MOORE, Circuit Judge.
This case addresses the prosecution’s outrageous failure to turn over to the defendant, Joseph Puertas, a report, completed weeks before trial, detailing an official investigation made by the State Police of allegations of local police misconduct in their investigation of Puertas. The prose *704 cution’s withholding of such vital information, which goes to the legitimacy of the state’s case against Puertas, cannot be justified here. The majority denies Joseph Puertas habeas relief on his claim of state suppression of evidence under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because it concludes that the Michigan Court of Appeals did not unreasonably apply Supreme Court precedent in deciding that Puertas failed to show prejudice, the third element of a Brady claim.[1] Because I believe that the Michigan Court of Appeals unreasonably determined that Puertas has not satisfied the second and third elements of Brady, I respectfully dissent.
The majority agrees with the conclusion of the Michigan Court of Appeals that Puertas “failed to demonstrate that [he] exercised reasonable diligence to obtain the Michigan State Police public corruption investigative report,” in particular because there was media coverage about the investigation of Oakland County Deputy Sheriff Kenneth Everingham’s allegations of police misconduct.[2] People v. Puertas, No. 224173, 2002 WL 31160304, at *5 (Mich.Ct.App. Sept.27, 2002). Specifically, the majority concludes that Puertas either had knowledge of the contents of the Michigan State Police investigative report (“Report”), which memorialized the results of the investigation of Everingham’s allegations, or that he had sufficient knowledge to have found the information contained therein with additional efforts. Majority Opinion (“Maj.Op.”) at-.
The conclusion on this point by both the majority and the Michigan Court of Appeals erroneously conflates several separate elements relating to Everingham’s accusations of misconduct — the accusations themselves, a general investigation into the accusations, the official investigation done by the Michigan State Police, information that happened to be in the Report, and the fact that the Report existed and that particular information was contained in the Report — each of which has independent significance. Comments by Puertas’s trial attorney reported in The Oakland Free Press indicate that Puertas knew about some of the allegations of police misconduct related to the investigation of Puertas. However, even if it could be shown that Puertas knew of the allegations and of some investigation into the allegations, it does not follow that he knew about the official investigation conducted by the Michigan State Police and that a Report containing the results was produced.[3]
*705 Independent knowledge of some of the information that happened to be contained in the Report is not the equivalent, for Brady purposes, of knowledge that a Report was issued and that certain claims could be substantiated by the Report. The fact that the Michigan State Police conducted an official investigation from which a Report resulted indicates that the allegations had some amount of credibility and gravity. Although Puertas knew about some of the information included in the Report, that an official investigation was conducted and a Report was issued lends credence to the possibility that Puertas was set up and that the charges against him were entirely fabricated. Puertas’s knowledge of some of the contents of the Report, including problems with the credibility of the informant Joseph Sweeney, discrepancies in testimony, and irregularities related to his own investigation that are documented in the Report, and his reliance on this information at trial, is not dispositive of whether Puertas was prejudiced by not having access to the Report. Substantiating these suggestions regarding shortcomings in the investigation of Puertas with the official Report by the Michigan State Police would have lent them much greater weight with the jury, and thus the prosecution’s failure to disclose the Report was prejudicial. See Strickler v. Greene, 527 U.S. 263, 284-85 & n. 26, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (distinguishing between the fact that interviews had occurred and the contents of those interviews, on the one hand, and that documents relating to these interviews had been produced, on the other).
The majority agrees with the conclusion of the Michigan Court of Appeals that Puertas had sufficient knowledge to have accessed the Report through “reasonable diligence” because local media articles reported on Everingham’s allegations and the resulting police investigation. Maj. Op. at---; Puertas, 2002 WL 31160304, at *5. However, in the context of an analysis of whether cause had been shown to overcome procedural default, the Supreme Court rejected this same inferential leap. See Strickler, 527 U.S. at 284-85, 119 S.Ct. 1936. The Court held that “a letter published in a local newspaper” containing statements from a witness that made it clear that she had been interviewed several times by a particular detective was insufficient to alert the defendant to the existence and suppression of records relating to those interviews. Id.
In this case, although the investigation and Report were completed on September 23, 1999, the Report itself came to light only after Puertas’s conviction, when, pursuant to requests made under the Freedom of Information Act, 5 U.S.C. § 552, a newspaper obtained copies of the Report and made them available to the defense. This belies the contention of the Michigan Court of Appeals that the Report would have been available to Puertas were it pursued with “reasonable diligence.” Puertas, 2002 WL 31160304, at *5. Moreover, Puertas did in fact make a motion for additional discovery, which was granted on June 10, 1998. Puertas should not have been expected to “scavenge for hints of undisclosed Brady material,” Banks v. Dretke, 540 U.S. 668, 694-95, 124 S.Ct. 1256, 157 L.Ed.2d 1166 (2004), because he reasonably relied on the discovery order, which directed the prosecution to turn *706 over to Puertas “[a]ny and all statements of interviews conducted by the prosecution and/or any investigating police agency from the beginning of the investigation until trial ... whether in the possession of the Oakland County Prosecutor’s Office or any of the police investigating agencies. ” Joint Appendix at 113 (Order Granting Motion for Additional Discovery) (emphasis added).
The Supreme Court has repeatedly held that a defendant can reasonably rely on the prosecution’s representation that it has disclosed all Brady evidence, and that once the prosecution confirms this representation, the defendant is under no further duty to investigate additional Brady materials. See Banks, 540 U.S. at 692-94, 124 S.Ct. 1256 (acknowledging reasonable reliance on the state’s assertion that it would disclose all Brady material); Strickler, 527 U.S. at 289, 119 S.Ct. 1936 (recognizing reasonable reliance on the prosecution’s open-file policy). Like the defendants’ reasonable reliance on the assertion in Banks and the open-file policy in Strickler, Puertas reasonably relied on the state trial court’s order that the prosecution turn over to him materials like the Report in question. That the prosecution was under this continuing obligation by order of the court to disclose such materials confirmed Puertas’s reasonable reliance, thereby relieving him of the responsibility of inquiring about additional Brady materials. Cf. Banks, 540 U.S. at 694, 124 S.Ct. 1256 (“[I]t was ... appropriate for [the defendant] to assume that his prosecutors would not stoop to improper litigation conduct to advance prospects for gaining a conviction.”); Strickler, 527 U.S. at 286, 119 S.Ct. 1936 (noting “[t]he presumption, well established by tradition and experience, that prosecutors have fully discharged their official duties” (quotations omitted)). Puertas had no reason to suspect that a Report had been issued, and, even if he did, he would have reasonably relied on the prosecution to comply with the court order to turn over such materials. See Banks, 540 U.S. at 693-94, 124 S.Ct. 1256; Strickler, 527 U.S. at 285-88, 119 S.Ct. 1936.
Given that knowledge of the Report does not flow from knowledge of the allegations and the investigation, that Puertas did not neglect to act with “reasonable diligence” in failing to discover the Report, and that the fact of the Report itself, apart from its contents, has independent significance in terms of prejudice, the majority’s explanations regarding what Puertas either knew or should have known about the contents of the Report are insufficient to refute the materiality of the Report. We review the conclusion of the Michigan Court of Appeals that the Report was not material, a mixed question of law and fact, to assess whether it was an “unreasonable application” of the Supreme Court’s governing standard on materiality — whether “there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,” Kyles v. Whitley, 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). See 28 U.S.C. § 2254(d)(1); Joshua v. DeWitt, 341 F.3d 430, 436 (6th Cir. 2003); Lancaster v. Adams, 324 F.3d 423, 429 (6th Cir.2003). The reasonable-probability standard is met “when the government’s evidentiary suppression ‘undermines confidence in the outcome of the trial’ ” Kyles, 514 U.S. at 434, 115 S.Ct. 1555 (quoting United States v. Bagley, 473 U.S. 667, 678, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
As discussed earlier, although Puertas may have raised a variety of impeaching and exculpatory information at trial that was contained in the report, including the lack of credibility of the informant, Joseph Sweeney, and other problems with the investigation, Puertas did not, because he *707 could not, rely on the fact that this information was credited by an official investigation by the Michigan State Police, which would have greatly enhanced the value of this information.[4] Only if Puertas had knowledge of and access to the Report could he have presented the pertinent parts of the Report so that the impeaching evidence could be accorded the proper weight by the jury. In particular, the Report confirms inconsistencies regarding how Puertas was identified as a suspect, which constitutes powerful exculpatory evidence because it supports the theory that Puertas was set up and that the charges against him were completely manufactured. It is unreasonable for the Michigan Court of Appeals to fail to acknowledge that the Report by the Michigan State Police (confirming the incredibility of the informant, the sloppy work of the local police, and the discrepancies in the local officers’ statements) would have far greater influence than the defense attorney’s mere suggestion of the same evidence.
The Michigan Court of Appeals relies heavily on the evidence in the Report that it considers unfavorable to Puertas (namely, that Everingham was an irresponsible employee with a gambling problem and that the Report ultimately found his allegations to be unfounded) to determine that Puertas was not prejudiced by the unavailability of the Report. The Michigan Court of Appeals was unreasonable in reaching this conclusion. First, the state court should have recognized that the Oakland County Sheriffs Department (“the Sheriffs Department”) had motives to downplay the problems with its investigation of Puertas. In addition to a desire to preserve its integrity, the Sheriffs Department faced civil liability due to a lawsuit brought by Everingham and also stood to reap financial benefits from the Puertas case due to the forfeiture of the assets involved. See L.L. Brasier, Oakland Drug Case Tests Police Claims on $5 Million, Detroit Free Press, Oct. 8, 1999, at IB. Second, the fact that the Report ultimately concluded that Everingham’s allegations were unfounded is not highly relevant to the Brady prejudice analysis because the evidentiary standard used by the Michigan State Police to confirm such allegations is markedly different from the evidentiary standard required to convict Puertas. Although there may not have been sufficient evidence for the State Police to conclude that misconduct occurred, the Report could, and in fact, does, raise enough suspicions regarding the investigation of Puertas to create a reasonable doubt as to his guilt. For these reasons, the suppressed evidence “put[s] the whole case in such a different light as to undermine confidence in the verdict.” See Kyles, 514 U.S. at 435, 115 S.Ct. 1555. The Michigan Court of Appeals acted unreasonably in applying the prejudice component of Brady.
The majority affirmed the district court’s denial of Puertas’s Brady claim on the third element and therefore found no need to discuss the other two elements.[5] Because I believe, as explained above, that Puertas has satisfied Brady’s third element, I will address the first two elements. *708 As the majority notes, there is no dispute that Puertas has satisfied the first element of his Brady claim because the Report has both exculpatory and impeachment value.[6] See Strickler, 527 U.S. at 281-82, 119 S.Ct. 1936.
The Michigan Court of Appeals concluded that Puertas failed to satisfy the second element, which requires that the evidence has been suppressed by the state, Strickler, 527 U.S. at 282, 119 S.Ct. 1936, because “possession” of the product of the Michigan State Police investigation could not be imputed to the prosecution or the Sheriffs Department, Puertas, 2002 WL 31160304, at *5. The district court erred in concluding that this decision was reasonable. Puertas v. Overton, 342 F.Supp.2d 649, 659 (E.D.Mich.2004).
The Supreme Court has held that “the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.” Kyles, 514 U.S. at 437, 115 S.Ct. 1555. Supreme Court precedent does not require possession to trigger the prosecutor’s duty to disclose, and in fact, holds quite the opposite. In Kyles, the Court expressly rejected the state’s argument that it had no duty to disclose materials known only to the police and not to the prosecution. 514 U.S. at 438, 115 S.Ct. 1555. In dismissing this suggestion, the Court stated that “[s]inee, then, the prosecutor has the means to discharge the government’s Brady responsibility if he will, any argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government’s obligation to ensure fair trials.” Id. The Court explained that “ ‘procedures and regulations can be established to carry [the prosecutor’s] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.’ ” Id. (quoting Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). It is clear, then, that the Supreme Court does not require actual knowledge, much less possession, of evidence, to satisfy the second element of Brady. Because the Sheriffs Office repeatedly interviewed individuals from the Oakland County Prosecutor’s Office (“the Prosecutor’s Office”) in the course of its investigation of Everingham’s charges, it is equally clear that the prosecution was aware of “favorable evidence known to the others acting on the government’s behalf in the case.” Kyles, 514 U.S. at 437, 115 S.Ct. 1555.
The decision of the Michigan Court of Appeals that “the investigation by the State Police was not taking place on behalf of the Oakland County Prosecutor[,]” and “may fairly be characterized as being adverse to the Oakland County Sheriffs Department,” Puertas, 2002 WL 31160304, at *5, is unreasonable because it fundamentally misunderstands the role of the prosecutor as set forth by the Supreme Court. The prosecutor is “ ‘the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done,’ ” *709 Kyles, 514 U.S. at 439, 115 S.Ct. 1555 (alterations in the original) (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935)). The Prosecutor’s Office, of course, has no interest in pursuing a conviction based on fabricated charges or false evidence. Therefore, the Michigan State Police investigation, conducted with the full cooperation and involvement of the Prosecutor’s Office, was conducted “on the government’s behalf in the case” because it was aimed at preserving the integrity of Puertas’s criminal prosecution. See Kyles, 514 U.S. at 437-40, 115 S.Ct. 1555. The prosecution’s withholding of this critical document from Puertas reveals an indefensibly narrow view of its duty to disclose.
For the foregoing reasons, the denial by the Michigan Court of Appeals of Puertas’s Brady claim constituted an “unreasonable application of[ ] clearly established Federal law.” 28 U.S.C. § 2254(d)(1). Therefore, I would grant Puertas’s habeas petition on this basis. I respectfully dissent.

. A successful Brady claim must satisfy the following three elements: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999).

. Although the majority classifies this aspect of the Brady analysis — whether a defendant could have independently accessed the information contained in the Brady material — as part of the third element’s prejudice inquiry, it is better viewed as part of the inquiry under Brady’s second element — whether the prosecution suppressed the evidence. The prosecution can only suppress evidence that is “wholly within [its] control,” and thus if a defendant knew enough to have taken advantage of the evidence or could have accessed the evidence from another source, it is the second element of Brady that has not been met. See Coe v. Bell, 161 F.3d 320, 344 (6th Cir.1998).

. The article quoting Puertas’s trial attorney was published on June 18, 1999. See Stephen W. Huber, Ex-Deputy Says He Lied About Seeing Drug Sale, The Oakland Press, June 18, 1999, at A-l, A-12. That article indicates that Puertas knew about some of Everingham’s allegations. Although this article and another later-published article mention an investigation into the allegations, and thus Puertas *705 could be charged with knowledge of an investigation, see id.; L.L. Brasier, Oakland Drug Case Tests Police Claims on $5 Million, Detroit Free Press, Oct. 8, 1999, at IB, it is not clear from the record when the Michigan State Police began its official investigation. Moreover, as discussed at greater length in the main text, knowledge of the investigation is not equivalent to knowledge of the resulting Report for Brady purposes.

. The majority’s explanation of one discrepancy is particularly unsatisfying. Sweeney, the informant, testified at trial that on several occasions he was paid $50 to $160 less than what Sergeant Kenneth Quisenberry of the Oakland County Sheriff’s Department told the Michigan State Police that Sweeney was paid for each drug transaction. The majority states that this "at most reflects] a confluence of Sweeney’s admittedly poor memory and Quisenberry’s poor record-keeping." Maj. Op. at-. However, Puertas should have had this information available to him both for impeachment purposes and to suggest that Quisenberiy's motives were tainted by financial interest.

. As explained in note two above, the majority’s rejection of the claim on the ground that *708 Puertas knew the substance of Report or knew enough to discover it through further inquiry is best understood as falling within the second element — whether the prosecution suppressed the evidence.

. Puertas contends that the Michigan Court of Appeals erroneously decided that impeaching evidence is not favorable evidence under Brady. The district court correctly concluded that the Michigan Court Appeals recognized both the proper significance of impeaching evidence under Brady’s first element and that Puertas had satisfied this element of Brady based on the Report’s impeachment value. Puertas v. Overton, 342 F.Supp.2d 649, 658 (E.D.Mich.2004).