BERNICE BOUIE DONALD, Circuit Judge,
dissenting in part.
Because I believe that the district court properly found the Ohio Supreme Court decision to be an unreasonable determination of the facts surrounding Bryan’s Bat-son challenge, I respectfully dissent from part II of the majority opinion.
I.
“The very foundation upon which Batson rests is the unquestioned' premise that while ‘a defendant has no right to a petit jury composed in whole or in part of persons of his' own race, the defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria.’ ” Lancaster v. Adams, 324 F.3d 423, 434 (6th Cir. 2003) (alterations removed) (quoting Batson v. Kentucky, 476 U.S. 79, 85-86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). I agree with the majority that AEDPA’s deferential standards govern our review of,Bryan’s Batson challenge. But I disagree that we are constrained to find that Bryan is not entitled to relief, as the majority has chosen to do. Regarding the duty of federal courts, the Supreme Court has been clear: “[Djeference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).
Under AEDPA, Bryan is entitled to relief if he can show that the Ohio Supreme Court’s decision “resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(2). In its review of Bryan’s Batson claim, the Ohio Supreme Court concluded that “Bryan offer[ed] no evidence of discriminatory intent.” State v. Bryan, 101 Ohio St.3d 272, 804 N.E.2d 433, 455 (2004). Based on the ample evidence of a race-based motive contained in the record, however, I believe that the. Ohio Supreme Court’s decision was unreasonable,
*1118 II.
The prosecution listed five reasons for striking potential juror Crystal Jones: (1) Jones’ demeanor and mannerisms indicated she was inconvenienced by jury duty; (2) Jones’ yes-or-no answers to voir dire questions indicated that she was offended by the prosecutor’s questions; (3) in her jury questionnaire, Jones failed to directly answer whether she believed that the criminal justice system was fair; (4) during voir dire, Jones explained her concerns regarding fairness in the criminal justice system by referring to The OxBow Incident (which, in giving a purportedly race-neutral explanation for striking Jones, the prosecutor incorrectly described as a book and film in which an African-American was wrongfully accused of a crime and lynched); and (5) in response to the prosecutor’s question about whether the veniremembers felt community pressure to convict Bryan, Jones nodded her head affirmatively to indicate that she felt pressure. Bryan v. Bobby, 114 F.Supp.3d 467, 502-04 (N.D. Ohio 2015).
Initially, two of the purportedly race-neutral reasons the prosecutor gave for striking Jones apply equally to white veniremembers who ultimately sat on the jury. First, the prosecutor argued that Jones gave primarily yes-or-no answers, which indicated that she felt inconvenienced and offended by the jury selection process. However, as the district court noted, there is ample evidence that both Jones and other white veniremembers alike gave yes-or-no answers when appropriate, and detailed responses when appropriate. Bryan, 114 F.Supp.3d at 509-11. Second, the prosecutor claimed that he struck Jones because she failed to directly answer whether she believed the criminal justice system to be fair. Notwithstanding the fact that the prosecutor never asked Jones this question directly, two white veniremembers expressed similar opinions, and one white veniremember specifically stated that she thinks the justice system fails to be fair sometimes. The prosecutor, however, did not take offense to that belief until it came from Jones, an African-American veniremember. Evidence of this nature favors a finding that a prosecutor’s reasons were, in fact, pretextual: “If a prosecutor’s proffered reason for striking a black panelist applies just as well to a white panelist allowed to serve, that is evidence tending to prove purposeful discrimination.” Miller-El, 545 U.S. at 232, 125 S.Ct. 2317.
The prosecutor’s next proffered race-neutral reasoning concerned Jones’ response to a jury questionnaire which asked whether she believed “an African-American can receive a fair trial in our Criminal Justice System.” Bryan, 114 F.Supp.3d at 501. Jones wrote that systems are necessary tq prevent the pqblic from taking matters into their own hands, and cited The Ox-Bow Incident. Id. During voir dire, Jones agreed with the prosecutor’s description of The Ox-Boiv Incident as a book and movie about a lynch mob rushing to judgment and hanging the wrong man. Nowhere, however, in this retelling did the prosecutor describe the lynched, innocent man as African-American. It was not until pressed to give a race-neutral reason for striking Jones that the prosecutor injected race into Jones’ answer, where it did not previously exist. Even accepting the prosecutor’s unilateral belief that Jones’ reference to The Ox-Bow Incident indicated her concern about racial justice, it does not sufficiently show a lack of discriminatory intent. Three white veniremembers also expressed concern with racial justice and were not stricken. In my view,- the only logical reason that the prosecutor struck Jones, and not the other three white veniremembers, is because Jones, like Bryan, is African-American, and the prosecutor feared that this commonality would *1119 make Jones more likely to vote in Bryan’s favor. See Miller-El, 545 U.S. at 232, 125 S.Ct. 2317.
Finally, the last explanation the prosecutor provides for striking Jones is that she responded with an affirmative gesture when defense counsel stated: “I think we all kind of agree that there’s a lot of pressure on a jury to convict.” Bryan, 114 F.Supp.3d at 512. Not surprisingly, this reason is in direct conflict with the prosecutor’s reasoning regarding Jones’ reference to The Ox-Bow Incident. Presumably, the prosecutor’s concern with Jones’ response here is that she is biased in favor of the state — i.e., pressured to convict— but also, if we take into consideration, the prosecutor’s concern with her reference to The Ox-Bow Incident, biased in favor of the defense. To allow both of these reasons to support a reasonable determination of the facts, in my mind, is illogical.[1]
HI.
“Batson recognized that it is fundamentally unfair to permit racial considerations to drive the use of peremptory challenges against jurors. When the prosecution strikes every potential black [] juror, a reviewing court has a responsibility to ensure that the trial court’s denial of the defendant’s Batson motion was not influenced by constitutional error.” Davis v. Ayala, — U.S. -, 135 S.Ct. 2187, 2218, 192 L.Ed.2d 323 (2015) (Sotomayor, J., dissenting). To view facts such as those presented in this case as objectively'reasonable, even within the constraints of AEDPA, abdicates our duty and renders Batson superfluous.
The judgment of the district court granting Bryan habeas relief on his Batson claim should be affirmed. I dissent as to part II of the opinion.

. I note that the prosecutor also offered, as a race-neutral reason, that Jones’ mannerisms and demeanor indicated that she was inconvenienced by the jury duty process. However, even agreeing with the majority that the "trial court is best situated to evaluate both the words and demeanor of jurors who are peremptorily challenged,” Majority Op. ante at 1111-12 (quoting Davis v. Ayala, — U.S. --, 135 S.Ct. 2187, 2201, 192 L.Ed.2d 323 (2015)), I find it difficult to accept the Ohio Supreme Court’s finding as reasonable. Particularly, as the district court foiind, because the trial court failed to engage in any on-the-record analysis of Jones’ demeanor. To me, the state supreme court’s decision was an unsupported presumption that Jones’" demeanor was a valid reason to strike her.