*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0132p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

ANTHONY BRAXTON,

　　　　　　*Petitioner-Appellee,*

　　　*v.*

RICHARD GANSHEIMER, Warden,

　　　　　　*Respondent-Appellant.*

No. 07-3387

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-00170—Lesley Brooks Wells, District Judge.

Argued: September 8, 2008

Decided and Filed: April 2, 2009

Before: BOGGS, Chief Judge; GIBBONS and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Chad A. Readler, JONES DAY, Columbus, Ohio, for Appellee. **ON BRIEF:** Michael Scott Criss, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellant. Chad A. Readler, JONES DAY, Columbus, Ohio, for Appellee. Anthony Braxton, Cleveland, Ohio, pro se.

_____

**OPINION**

_____

　　GRIFFIN, Circuit Judge. Respondent Richard Gansheimer, Warden, appeals the order of the district court granting petitioner Anthony Braxton, an Ohio state prisoner, a conditional writ of habeas corpus pursuant to 28 U.S.C. § 2254, on the basis of Braxton's claim that the prosecution's exercise of a peremptory challenge during jury selection at his state court trial was racially discriminatory in violation of the Equal Protection Clause and *Batson v. Kentucky*, 476 U.S. 79 (1986). In granting the writ, the district court held that the

1

Ohio courts' decisions denying Braxton's *Batson* challenge was an unreasonable application of clearly established federal law and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, entitling Braxton to relief under 28 U.S.C. § 2254(d)(1) and (2). For the reasons stated below, we reverse the judgment of the district court and remand the case with instructions to dismiss Braxton's habeas petition.

I.

On November 19, 2001, Anthony Braxton was convicted by a jury in the Court of Common Pleas, Cuyahoga County, Ohio, on one count of felonious assault upon a police officer in violation of OHIO REV. CODE ANN. § 2903.11; one count of failure to comply with an order or signal of a police officer, contrary to OHIO REV. CODE ANN. § 2921.331; and one count of receiving stolen property in violation of OHIO REV. CODE ANN. § 2913.51. Braxton and the victim, a police officer whom he allegedly assaulted, are both African-American males.

During voir dire, defense counsel objected unsuccessfully to the prosecution's use of two of its four peremptory challenges to remove two African-American jurors from the panel. Three of the twenty-member prospective panel were African Americans. The prosecutor used his first peremptory challenge to excuse Juror No. 8, a retired African-American female who had worked for the public defender's office for fifteen years. The prosecutor also excused Juror No. 14, an African-American male, after questioning him about his seeming inattentiveness and demeanor:

> [PROSECUTOR]: Are you off this week? Are you able to take the week off? Is that a hardship for you especially?
>
> JUROR NO. 14: No, it's not.
>
> [PROSECUTOR]: When you got your subpoena for jury service, what was going through your mind?
>
> JUROR NO. 14: Why me?
>
> [PROSECUTOR]: Why me? Did anybody in this room when they got their jury service think all right? You were excited?

* * *

[PROSECUTOR]:   And one of the reasons I ask you, [Juror No. 14], because you are a very laid back person or you are kind of exuding the fact you might not want to be here.  Just to be honest.  By body language.  Now, I don't know.  It could be you're laid back and you are kind of paying attention.  And so I just have to ask, would you rather not be here on this case?

JUROR NO. 14:  You know, I have no problem.  I served before.

[PROSECUTOR]:   And believe me, nobody wants to be here.  I'm not trying to pick on you.

JUROR NO. 14:  I understand.

[PROSECUTOR]:   We have to pick a jury that's fair for the State and fair for the defendant and so, if I see someone I think – I'm not just picking on you, hey, maybe he doesn't want to be here.  You know I want to ask, okay?  So you are saying you will be all right?

JUROR NO. 14:  No problem.

[PROSECUTOR]:   Okay.  Do you have anything else for me, sir?

JUROR NO. 14:  No.

When the prosecutor exercised his peremptory challenges to excuse Juror No. 8 and Juror No. 14, defense counsel objected and moved for a mistrial, maintaining that the prosecutor's challenges regarding these two jurors violated the Equal Protection Clause and *Batson,* which preclude peremptory challenges on the basis of race.  At the ensuing bench conference, defense counsel asserted that the prosecution had "shown a pattern" by challenging both African-American jurors and "remov[ing] 100 percent of potential black jury panel members."  Defense counsel argued that, as a result, "only one other [African-American juror] remain[ed] at the end of the line and we are not likely to even reach her."

The trial court then asked the prosecutor to elaborate on his reasons for excusing the two jurors.  The prosecutor explained that he excused Juror No. 8 because she worked for the public defender's office for fifteen years and her employment there "worried" the State; thus, the prosecutor believed she would be better suited for a civil-action jury panel.  The prosecutor perceived Juror No. 14 as being disinterested in serving on the jury:

With regards to [Juror No. 14], he sat there the entire time with his arms crossed and his head bent over, and his hand – he showed no interest in being in here.  I specifically questioned him about his body language, and he even said he didn't want to be here.  So, I am not going to have someone

sit on a jury that for the last two hours didn't listen to anything, had no intention of actually paying attention and then even when I asked him, he said he didn't want to be here. It's got nothing to do with race.

With regards to [the third African-American prospective juror], who is juror number 20, there is a potential if she gets on this panel and I can tell you right now we have no problem with her as well, the lone black juror.

We also want to note our objection for the record because we know that's why we objected before. We knew he [defense counsel] was planning on getting rid of four white people as well. There is a reverse *Batson*. There's case law on that, and that's why we noted our continuing objection as well. And I suspect that's why he actually put it on initially because he knew both African American jurors were not suitable for this jury regardless of the race. One was a public defender. One hadn't paid attention at all. He knew we were kicking them off, and I specifically asked the guy about it.

Defense counsel objected to the prosecutor's explanation, and the following colloquy occurred between counsel and the court:

[DEFENSE COUNSEL]: Judge, as it relates to [Juror No. 8], she was retired I think she said nine years ago from the Public Defender's Office. And she had also worked for Legal Aid. Now, working for Legal Aide [sic] or the Public Defender's Office for nine years after you terminate your employment, then that is most extraordinary.

I also point out as it relates to Mr. Smoot [Juror No. 14], right now as we sit here, juror number 14 is seated in the jury, he's turned around, his arms are folded, right at the moment his head is down. Your Honor, that does not disqualify him.

[PROSECUTOR]: What is he talking about?

[THE COURT]: [Defense counsel], I agree with you, that does not disqualify a person from serving as a juror, but [the prosecutor] is attempting to present a nondiscriminatory reason for the reason he exercised his peremptory.

[DEFENSE COUNSEL]: Your Honor, in terms of what he's just indicated, neither one of them are sufficient bases to satisfy our *Batson* objection. We again move for a mistrial.

[THE COURT]: I disagree with your reasoning. I think they are sufficient bases to satisfy the standard of *Batson*. I will overrule your objection and overrule your request for a mistrial.

The trial proceeded with a jury panel composed of all white jurors. The remaining African-American juror – Juror No. 20 – was seated as an alternate. The jury found Braxton

guilty as charged on all counts, and the court later imposed a sentence of six years of imprisonment.

In his direct appeal, Braxton raised six claims, including his assertion that the prosecution's peremptory challenges of Jurors Nos. 8 and 14 violated *Batson*. *See State v. Braxton*, No. 80663, 2002 WL 31123906 (Ohio Ct. App., Sept. 26, 2002). The Ohio Court of Appeals affirmed Braxton's convictions, finding all of his assignments of error to be without merit. *Id.* With regard to the *Batson* claim, the court, after accurately reciting the governing legal principles, found no purposeful discrimination under the circumstances:

> In the instant case, the defense sought a mistrial based on the fact that the State removed two black jurors. When pressed for an explanation as to the grounds for the peremptory challenge, the State explained that one of the jurors worked at the public defender's office for 15 years. According to the State, the second juror indicated by his body language during voir dire "arms crossed and head bent over" that he did not desire to sit on the case. The prosecutor concluded that such an individual would not be attentive.
>
> * * *
>
> In the case at bar, the trial court, after appropriate inquiry, rejected the notion that the prosecutor's challenge rested on perceived stereotypical assumptions or the intention of excluding African-American jurors. Nothing in the prosecutor's explanation showed that he chose to exclude jurors on the basis of race.

*Id.* at *3. Affording substantial deference to the trial judge's assessment of credibility and demeanor, the court of appeals concluded that "Braxton failed to make a prima facie case of purposeful discrimination, the prosecutor provided a bona fide race-neutral explanation for the challenge, and the court's determination was not clearly erroneous." *Id.*

Upon further appeal and reiteration of his *Batson* claim, the Supreme Court of Ohio issued an order denying leave to appeal and dismissing the appeal "as not involving any substantial constitutional question." *State v. Braxton*, 783 N.E.2d 521 (Ohio 2003) (unpublished table decision).

Braxton thereafter filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal district court, averring, *inter alia*, *Batson* error with regard to Juror No.

14.[1] Ultimately, on March 1, 2007, after referral of the matter to a magistrate judge, the district court issued an Opinion and Order granting Braxton a conditional writ of habeas corpus on his Equal Protection claim.[2]  Reviewing the case under the applicable standards of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the district court held that

> the evidence is clear and convincing that the prosecutor's stated justifications for excusing Juror No. 14 were a pretext for discrimination. The trial court failed to address the blatant inconsistency between the juror's actual response and the prosecutor's claims in *Batson* inquiry, and the appellate court unreasonably determined that the trial court did not err.  Additionally, the appellate court made an unreasonable application of *Batson* in finding that Mr. Braxton did not satisfy his prima facie case when such matter had become moot.

The district court therefore ordered Braxton's state court convictions and sentences to be vacated, unless the State of Ohio commenced a new trial against him within 120 days of entry of the judgment.  This timely appeal by respondent Gansheimer followed.

## II.

We review the district court's legal conclusions in habeas proceedings de novo and its findings of fact for clear error.  *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008).  AEDPA supplies the narrow parameters of federal habeas review of state court proceedings, providing that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] As the district court accurately noted, "[a]lthough Mr. Braxton asserts both of the prosecutor's peremptory challenges as a basis of his petition, the thrust of [his] argument focuses on Juror No. 14."

[2] The district court adopted in part and rejected in part the Report and Recommendation ("R&R") of the magistrate judge, who advised that Braxton's habeas petition should be denied on all grounds.  The district court agreed with the R&R that Braxton's claims unrelated to the *Batson* issue were procedurally defaulted and dismissed those claims.  The court also denied Braxton's motions for summary and declaratory judgment.  However, the court disagreed with the R&R that Braxton's *Batson* claim pertaining to Juror No. 14 did not merit relief.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harris*, 526 F.3d at 909-10.

Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case," or if a "state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Harris*, 526 F.3d at 909 (citations omitted). "[T]he central inquiry is whether the state court decision was objectively unreasonable and not simply erroneous or incorrect." *Id*. at 910 (internal quotation marks omitted). Thus, "a reviewing court must be careful not to substitute its own judgment for that of the state court by equating the more stringent standard of 'objectively unreasonable' with the more lax standard of 'clear error.'" *Id*.

With respect to § 2254(d)(2), "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003).

Braxton's *Batson* claim presents a mixed question of law and fact and "necessarily focuses on the reasonableness of the decisions of the state courts – that is, whether those decisions constituted an unreasonable application of Supreme Court precedent." *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). *See also Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008) ("Mixed questions of law and fact are reviewed under the 'unreasonable application' prong of the AEDPA."). However, "the question of 'whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is, as *Batson* recognized, a question of historical fact.'" *Lancaster*, 324 F.3d at 429 (quoting *Hernandez v. New York*, 500 U.S. 352, 367 (1991)). "Under

AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence." *Id.* at 429 (citations and internal quotation marks omitted). Thus, while a district court's ruling on a *Batson* claim presented on direct appeal is entitled to great deference and should not be disturbed unless it is clearly erroneous, "the standard must be modified in the context of a § 2254 petition to give credence to § 2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence." *Id*. at 429 n.1.

The Equal Protection Clause precludes a party from using a peremptory challenge to exclude members of the jury venire on account of their race. *Batson,* 476 U.S. at 89. *Batson* involves a tripartite burden-shifting inquiry. *Hernandez*, 500 U.S. at 358. First, the party opposing the peremptory challenge must make a prima facie showing of racial discrimination. *Id*. If such a case is established, the burden shifts to the defending party to articulate a race-neutral explanation for striking the juror in question. *Id.* at 358-59. The party's reason for its decision to dismiss a juror is "neutral" if "it is based on something other than the race of the juror" and, absent "discriminatory intent inherent in the explanation," the reason should be deemed race-neutral. *United States v. Jackson*, 347 F.3d 598, 606 (6th Cir. 2003). "This non-racial explanation 'need not be particularly persuasive, or even plausible, so long as it is neutral.'" *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001), overruled in part on other grounds by *Barnes v. Wright*, 449 F.3d 709, 718-20 (6th Cir. 2006) (quoting *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999)). "[B]ody language and demeanor are permissible race-neutral justifications for the exercise of a peremptory [challenge]." *McCurdy*, 240 F.3d at 521 (citing *United States v. Changco*, 1 F.3d 837, 840 (9th Cir. 1993)); *see also United States v. Forrest*, 402 F.3d 678, 687 (6th Cir. 2005) (holding that the prosecution's articulated reason for exercising a peremptory challenge – the juror's "extreme negative reaction" to being called for jury duty – was a permissible race-neutral justification in the absence of proof that this reason was pretextual). Indeed, "[t]he fact that a prosecutor's reasons may be founded on nothing more than a trial lawyer's instincts about a prospective juror does not diminish the scope of acceptable

invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions." *United States v. Power*, 881 F.2d 733, 740 (9th Cir. 1989) (citation omitted).

Once the defending party proffers a race-neutral reason, the challenging party, who always bears the ultimate burden of persuasion, must show that the explanation is merely a pretext for a racial motivation. *McCurdy*, 240 F.3d at 521. Based on the parties' submissions, the trial court must ascertain whether the claimant has demonstrated purposeful discrimination. *Id.*; *Hernandez*, 500 U.S. at 359. "In making this determination, the court presumes that the facially valid reasons proffered by the [party exercising the peremptory] are true." *Lancaster*, 324 F.3d at 433. "[T]he critical question in determining whether a [defendant] has proved purposeful discrimination . . . is the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller-El*, 537 U.S. at 338-39. In other words, "the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible." *Id.* at 339. "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.* "Great deference" to a trial court's findings on the issue of discriminatory intent "makes particular sense" because

> [t]here will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

*Hernandez*, 500 U.S. at 364-65 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985)). Thus, "*in the absence of exceptional circumstances*, we would defer to state-court factual findings . . . ." *Id.* at 366 (emphasis added).

III.

In the present case, the district court faulted the state courts' application of *Batson* to the circumstances and concluded that Braxton was entitled to habeas relief under both the legal and factual standards of § 2254(d). The district court determined that the state trial court skipped the first step of the *Batson* inquiry – the prima facie showing – and immediately looked to the prosecution to articulate a nondiscriminatory explanation for its peremptory challenges. Accordingly, the district court concluded that "the state appellate court erred when it concluded that Mr. Braxton failed to make such a [prima facie] showing."

Next, the district court determined that, instead of analyzing the persuasiveness of the prosecution's nondiscriminatory justification, both the state trial and appellate courts "glossed over" the third step of the *Batson* inquiry. The district court found that the trial court "offered no explanation for its ruling other than its conclusion that it disagreed with Mr. Braxton's position," and the state appellate court, in turn, "conclusively presumed that there was no discriminatory intent because a race-neutral explanation was tendered." The district court concluded that "by failing to address this third step, neither the trial court nor the appellate court made a reasonable application of federal law as set forth in *Batson*."

Finally, from a factual standpoint, the district court found that "the evidence is clear and convincing that the prosecutor's stated justifications for excusing Juror No. 14 were a pretext for discrimination." The court explained:

> The prosecutor relied on Juror No. 14's body language and, more importantly, on what he described as Juror No. 14's statements that "he didn't want to be here." Both the state trial and appellate courts ignored the fact that Juror No. 14 never made these statements. A review of the prosecution's voir dire examination of Juror No. 14 reveals that the prosecutor went to great length to entice this juror into conceding that he had no interest in serving on this jury. Yet, despite this prodding, Juror No. 14 stood firm in his responses that he had no problems with jury service. The prosecutor tried, unsuccessfully, to put words in Juror No. 14's mouth. Given this blatant inconsistency between the prosecutor's stated "justification" and Juror No. 14's actual statements as recorded,

the state courts' rulings were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

\* \* \*

[T]he prosecutor did not justify his peremptory challenges solely on Juror No. 14's body language, which he could have, but instead emphasized to the court incorrectly that Juror No. 14 voiced opposition to jury service. The Court finds as the tipping point in this close analysis the fact that the prosecutor misquoted Juror No. 14 twice as having said he did not want to be there when in fact Juror No. 14 said exactly the opposite. This blatant inconsistency between what the prosecutor argued and what the record demonstrates undermines the prosecutor's stated reasons for excusing Juror No. 14 and therefore exposes his pretext for racial discrimination.

In this appeal, respondent first argues that the district court erred in holding that the state courts unreasonably applied clearly established Supreme Court precedent to the facts of the case. Respondent points out that once Braxton raised the *Batson* challenge, the state trial court held a bench conference during which, in conformity with *Batson*, defense counsel was permitted to state his prima facie case, the prosecutor was then allowed to set forth race-neutral reasons for striking Juror No. 14, and the trial court weighed the parties' arguments before making its determination that Braxton did not prove purposeful discrimination. Respondent contends that thereafter, the state appellate court properly applied the three-part *Batson* test in affirming the trial court. Thus, according to respondent, the record illustrates that the trial court's adjudication of the *Batson* issue was both correct and reasonable. We agree, reiterating the important principle that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

As the district court correctly noted, the state trial court did not rule expressly on whether Braxton established a prima facie case of discrimination and looked immediately to the prosecution to articulate a neutral reason for its peremptory challenges. In such circumstances, "[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate

question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez*, 500 U.S. at 359. Consequently, the district court determined that the Ohio Court of Appeals erred when it addressed this moot issue on appeal and concluded that "Braxton failed to make a prima facie case of purposeful discrimination." *Braxton*, 2002 WL 31123906 at *3.

However, we conclude that the Ohio Court of Appeals' application of *Batson* and *Hernandez* was neither erroneous nor unreasonable because the appellate court did not rely solely upon the moot issue in rejecting Braxton's *Batson* claim. *Cf. Lancaster*, 324 F.3d at 435 ("[B]ecause the trial court here had ruled on the ultimate question under *Batson* – whether Petitioner had established intentional discrimination – when it concluded that Petitioner had not demonstrated that the reasons for the strike of [a juror] proffered by the prosecution were pretextual, the Michigan Court of Appeals acted unreasonably under Supreme Court precedent set out in *Hernandez* when it *rested its holding* on an issue that had become moot" and found that the petitioner had not made out a prima facie showing of discrimination) (emphasis added).  Rather, the Ohio Court of Appeals appropriately analyzed the *Batson* issue by addressing its second and third components and concluding that "the prosecutor provided a bona fide race-neutral explanation for the challenge, and the court's determination was not clearly erroneous." *Braxton*, 2002 WL 31123906 at *3.  By means of this alternative holding, the appellate court resolved the dispositive issue of purposeful discrimination.  In doing so, it properly and reasonably applied *Batson* and *Hernandez*.

The question remains whether the state courts properly evaluated the prosecution's race-neutral explanation for the peremptory strike of Juror No. 14 under the third prong of *Batson*, or whether, as the district court determined, the courts gave this critical step short shrift.

"In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez*, 500 U.S. at 365.  At this stage, a trial court has "the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S.

at 98. In giving effect to this duty, we have opined that "when the purported race-neutral justification is predicated on subjective explanations like body language or demeanor," an "on-the-record analysis of each of the elements of a *Batson* challenge is especially important." *McCurdy*, 240 F.3d at 521. In *McCurdy*, we held that "because the district court did not merely credit the explanation of [the defendant], but itself found that [the juror] was passive and disinterested, . . . [the plaintiff] has not demonstrated that the district court clearly erred in dismissing his *Batson* challenge." *Id*. *Cf. Smulls v. Roper*, 535 F.3d 853, 860-61 (8th Cir. 2008) (noting that the Supreme Court has eschewed a formalistic approach to fact finding under *Batson* in holding that the state court's failure to make detailed fact findings following a *Batson* challenge was not an unreasonable application of clearly established federal law under § 2254(d)(1)).

In the present case, when the totality of the circumstances are considered, the record reflects that the trial court, albeit in abbreviated fashion, adequately and reasonably conveyed its decision that the prosecution's race-neutral, demeanor-based justification for the peremptory strike of Juror No. 14 was credible and that Braxton failed to carry his burden on the ultimate issue of purposeful discrimination. In doing so, the trial court adhered to the *Batson* three-step inquiry and neither conflated the steps, *see, e.g.*, *United States v. Kimbrel*, 532 F.3d 461 (6th Cir. 2008), nor restricted counsel in their respective arguments.[3] Likewise, the state court of appeals, after articulating the requisite tripartite burden-shifting *Batson* framework, obviously reviewed the trial transcript, acknowledged the prosecution's assertion that Juror No. 14's body language ("arms crossed and head bent over") indicated disinterest, noted that "the trial court, after appropriate inquiry, rejected the notion that the prosecutor's challenge [was pretextual]," and finally, concluded independently that "[n]othing in the prosecutor's explanation showed that he chose to exclude jurors on the basis of race." *Braxton*, 2002 WL 31123906 at *3. In the absence of clearly established Supreme Court authority requiring further elaboration, we conclude that the district court erred in holding that the

---

[3]Braxton does not dispute that "[t]he prosecutor's explanation [that Juror No. 14 was disinterested] satisfied the minimal burden of [the second] stage in the analysis," i.e., that the state's justification "need not be particularly persuasive, or even plausible, so long as it is neutral." *McCurdy*, 240 F.3d at 521 (quoting *Harris*, 192 F.3d at 586).

state courts ran afoul of *Batson* and its progeny and misapplied this precedent in an *objectively unreasonable* manner under § 2254(d)(1). *Cf. Purkett v. Elem*, 514 U.S. 765, 766, 769-70 (1995) (holding that a federal court failed to adequately defer to the state trial court's factual finding of no racial motive, even though the trial court rejected the *Batson* objection "without explanation").

The district court's erroneous determination that the state courts unreasonably applied *Batson* by "gloss[ing] over" the third step is inextricably intertwined with its conclusion that the state courts' denials of Braxton's *Batson* challenge were based on an unreasonable determination of the facts in light of the evidence presented at trial, contrary to § 2254(d)(2). The district court held that the prosecution's mischaracterization of Juror No. 14's voir dire responses in the course of justifying its peremptory challenge "undermine[d] the prosecutor's stated reasons for excusing Juror No. 14 and therefore expose[d] his pretext for racial discrimination." By allegedly "ignor[ing]" this "blatant inconsistency between what the prosecutor argued and what the record demonstrates," the district court determined that the state courts based their rulings on an unreasonable determination of the facts.

We hold that the district court usurped the fact-finding functions of the trial court and failed to accord the trial court the "great deference" to which it was entitled in judging the credibility and demeanor of the juror and the prosecutor. Moreover, the district court itself misapplied *Batson* by failing to place the ultimate burden on Braxton to demonstrate that the prosecutor engaged in purposeful discrimination in striking Juror No. 14.

Our conclusion that the district court overstepped its bounds is confirmed by the Supreme Court's decision in *Rice v. Collins*, 546 U.S. 333 (2006), in which the Court overturned the Ninth Circuit Court of Appeals' determination that the state trial court unreasonably credited the prosecutor's demeanor-based justification to exclude an African-American juror. In our decision in *Harris*, we summarized *Rice* as follows:

> In [*Rice*], when the defendant opposed the prosecution's exercise of a
> peremptory challenge against juror 16, the prosecution explained that it

disqualified her because she had rolled her eyes in response to a question from the court, was young and possibly too tolerant of drug crimes, and lacked sufficient connections to the community.  The trial court [which did not observe the complained-of demeanor] subsequently affirmed the prosecution's race-neutral reasons.

During the defendant's habeas appeal before the Ninth Circuit, however, that court disagreed with the trial court's credibility determination and found it factually unreasonable to accept the prosecution's justifications based on juror 16's demeanor and youth.  Conducting its own review of the underlying facts, the Ninth Circuit found the prosecutor lacking in credibility because she had previously referred to another juror as "young" despite that juror's status as a grandmother, had attempted impermissibly to employ gender as a race-neutral basis for striking juror 16, and had claimed juror 16 would be too lenient toward a drug crime even though juror 16 expressed an affirmative belief that the crime at issue should be illegal.  After assessing the Ninth Circuit's reasons for doubting the prosecutor's credibility, the Supreme Court disagreed that the trial court's factual findings were unreasonable.  At most, the Supreme Court explained, "the trial court had reason to question the prosecutor's credibility regarding [j]uror 16's alleged improper demeanor," but this does not translate into the "conclusion that the trial court had no permissible alternative but to reject the prosecutor's race-neutral justifications."  Overall, the Supreme Court reversed the Ninth Circuit's decision because the court "*attempt[ed] to use a set of debatable inferences to set aside the conclusion reached by the state court* [*in violation of*] *AEDPA's requirements for granting a writ of habeas corpus.*"

*Harris*, 526 F.3d at 911 (citations omitted, emphasis added).

Thus, where "[*r*]*easonable minds reviewing the record might disagree about the prosecutor's credibility, . . . habeas review . . . does not suffice to supersede the trial court's credibility determination.*"  *Rice*, 546 U.S. at 341-42 (emphasis added).  *Cf. Uttecht v. Brown*, 127 S. Ct. 2218, 2224 (2007) (according deference to the state trial court's decision to excuse a prospective juror for cause in a death penalty case).

Respondent concedes that the prosecutor mischaracterized Juror No. 14's voir dire responses when he represented to the trial court that the juror "said he didn't want to be here."  However, here, as in *Rice*, the district court improperly relied upon debatable inferences to reverse the state courts' *Batson* decision by presuming

subjectively that "the prosecution's justification for excusing Juror No. 14 *is based primarily* on statements Juror No. 14 never uttered," and by focusing an inordinate amount of attention on the misstatement while ignoring the prosecutor's other race-neutral reason for the strike – the disinterest demonstrated by Juror No. 14's body language and demeanor – that was accepted by the trial court. As the record shows, the trial court's factual determination was not unreasonable.

The prosecutor stated during the *Batson* hearing:

> With regards to [Juror No. 14], he sat there the entire time with his arms crossed and his head bent over, and his hand – he showed no interest in being in here. I specifically questioned him about his body language, and he even said he didn't want to be here. So, I am not going to have someone sit on a jury that for the last two hours didn't listen to anything, had no intention of actually paying attention and then even when I asked him, he said he didn't want to be here. It's got nothing to do with race.

Later, the prosecutor again argued to the trial court that Juror No. 14 "hadn't paid attention at all." In fact, the record indicates that during active voir dire, well before the prosecutor had to justify his peremptory strike during the bench conference, he remarked to Juror No. 14 that he was concerned about his demeanor:

> You are [either] a very laid back person or you are kind of exuding the fact you might not want to be here. Just to be honest. By body language. Now I don't know. It could be you're laid back and you are kind of paying attention.

Defense counsel even confirmed, perhaps inadvertently, the prosecutor's observations when, during the bench conference, he called attention to the fact that "as it relates to Mr. Smoot [Juror No. 14], right now as we sit here, juror number 14 is seated in the jury, he's turned around, his arms are folded, right at the moment his head is down."[4] Moreover, Juror No. 14's terse responses during voir dire – "Why me?" and

---

[4]On appeal, Braxton argues that his trial counsel was referring not to Mr. Smoot but to the juror who would have replaced him when he was excused. The record does not indicate whether Mr. Smoot left his place as Juror No. 14 before the side-bar conference began. In any event, Braxton's counsel was pointing out that the prosecution's attempt to prove Juror No. 14's disinterest by reference to his body language was not credible, indicating that Juror No. 14's demeanor was the basis for the prosecutor's peremptory strike.

"[n]o problem" – were at best non-committal, but hardly enthusiastic and not, as the district court found, "exactly the opposite" of what the prosecutor attributed to the juror.

In holding that the prosecutor's stated reason was not persuasive, and granting relief on that basis alone, the district court erred in failing to shift the burden back to Braxton to prove purposeful racial discrimination. In *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996), we held that the district court did not clearly err in finding that the defendant failed to show that the peremptory strike of a Latino juror deemed "too unintelligent and disinterested" to serve was intentionally discriminatory, where the defense failed to introduce any evidence in opposition to the explanation. We noted that "[t]he defense might have demonstrated that the articulated reasons were in fact a pretext by showing, for example, that the prosecution had not challenged equally unintelligent or disinterested jurors of other races." *Id*. "It is well established that a *Batson* violation may be shown by disparate treatment of white and minority jurors . . . ." *United States v. Torres-Ramos*, 536 F.3d 542, 559 (6th Cir. 2008). In this case, however, defense counsel made no such comparisons and, in fact, the prosecutor indicated that he had no problem with Juror No. 20 (the alternate).[5]

Given the record before us, we conclude that the district court – like the Ninth Circuit in *Rice* – "assigned the [misstatements] more weight than [they] can bear" where the prosecutor provided another "permissible and plausible race-neutral reason[]" and Braxton "provide[d] no argument why this portion of the colloquy demonstrates that a reasonable factfinder must conclude the prosecutor lied about the [negative demeanor] and struck [the juror] based on [his] race." *Rice*, 546 U.S. at 340-41. There is no evidence that the state courts relied upon the prosecutor's misstatement in denying the

---

[5]On appeal, petitioner points out the prosecutor's comment during voir dire when, in introducing himself to the jurors, he joked about the challenges of jury service and observed, "I have two children. The children's ages are three and a year and a half. Like you, they're sleeping . . . ." Petitioner suggests that "[w]hen the prosecutor jokes with the potential jurors about them 'sleeping' during voir dire, it is odd that the prosecutor would then challenge a juror for his purported disinterested demeanor." However, we cannot glean any discriminatory intent from this comment, which appears to be simply an effort at "breaking the ice."

*Batson* challenge;[6] conversely, the state courts clearly credited the prosecutor's race-neutral reason – Juror No. 14's demeanor – in rejecting it.

Thus, while the prosecutor's misstatement regarding Juror No. 14's responses may furnish a reason to question whether the prosecutor's motivation for the peremptory strike was pretextual, it does not compel such a conclusion. Under these circumstances, the district court erred in failing to defer to the trial court as the best judge of the prosecutor's and the juror's credibility. It further erred in concluding, under AEDPA, that Braxton presented the "clear and convincing evidence" necessary to rebut the presumption of correctness afforded to the Ohio courts' factual determinations.

Finally, Braxton relies upon the Supreme Court's recent decision in *Snyder v. Louisiana*, 128 S. Ct. 1203 (2008), and argues that this case highlights the deficiencies in the state courts' findings. In *Snyder*, a state capital murder case, the prosecution eliminated all five of the prospective African-American jurors who remained on the thirty-six member venire following challenges for cause. The Supreme Court focused on the defendant's *Batson* challenge to one of these jurors and refused to presume that the trial court credited the prosecution's two distinct race-neutral reasons for the peremptory strike – that the juror looked nervous and had work-related time constraints – because the trial court simply "allow[ed] the challenge without explanation." *Snyder*, 128 S. Ct. at 1209. Although the Court adhered to the highly deferential standard of review originally enunciated in *Hernandez*, *id*. at 1208, it nonetheless concluded that the trial court committed clear error in rejecting the petitioner's *Batson* objection:

> [D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not show that the trial judge actually made a determination concerning [the juror's] demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning [the juror's] demeanor, the trial judge simply allowed the challenge without

---

[6]While the district court supposes that the state courts "ignored" or overlooked the misstatement, and therefore rendered a decision based on an unreasonable determination of the facts, it is equally possible – and the cold transcript does reveal – that the state courts may have, alternatively, purposefully "ignored" the misstatements precisely because they were inaccurate.

explanation. It is possible that the judge did not have any impression one way or the other concerning [the juror's] demeanor. [The juror] was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled [the juror's] demeanor. Or, the trial judge may have found it unnecessary to consider [the juror's] demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that [the juror] was nervous.

*Id.* at 1209.

A determinative factor in the Court's holding was its conclusion that the prosecution's second reason proffered for the strike – the juror's student-teaching obligations – was "suspicious," "implausible," and "pretextual" given the brevity of the trial, the juror's lessened concern upon his advisor's assurances that any interruption would not cause a problem, and the fact that similarly situated white jurors with more onerous conflicts were not challenged. *Id*. at 1211-12. Consequently, the Court concluded that "in light of the circumstances here – including [the] absence of anything in the record showing that the trial judge credited the claim that [the juror] was nervous, the prosecution's description of both of its proffered explanations as 'main concern[s],' and the adverse inference [arising from the pretextual work-related reason] – the record does not show that the prosecution would have pre-emptively challenged [the juror] based on his nervousness alone." *Id*. at 1212 (citation omitted).

*Snyder* is readily distinguishable from the present case. Here, we are not left to speculate regarding the basis for the trial court's *Batson* ruling. As we have concluded, the trial court made the requisite findings and credited the prosecution's race-neutral concern with Juror No. 14's disinterested demeanor as the basis for denying Braxton's *Batson* challenge. The record substantiates the state courts' acceptance of this proffered reason. Juror No. 14's demeanor "can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id.* at 1208. Because Braxton has failed to present clear and convincing evidence to the contrary, we conclude that the Ohio courts' *Batson* ruling did not constitute an unreasonable determination of the facts in light of the evidence presented in the state court proceedings under § 2254(d)(2). In

the absence of exceptional circumstances, we will leave interpretation of the nuances of demeanor to the trial court. This is not an exceptional case.

IV.

For the reasons stated above, we conclude that the district court erred in granting Braxton a conditional writ of habeas corpus under 28 U.S.C. § 2254. We therefore reverse the judgment of the district court and remand the case with instructions to dismiss Braxton's habeas petition.