Timothy M. GLASS, Petitioner–
Appellant,

v.

Francisco PINEDA, Warden,
Respondent–Appellee.

No. 14–4069.

United States Court of Appeals,
Sixth Circuit.

Nov. 23, 2015.

BEFORE: SILER, MOORE, and GIBBONS, Circuit Judges.

## OPINION

KAREN NELSON MOORE, Circuit Judge.

Timothy Glass appeals the district court's denial of his petition for a writ of habeas corpus, contending that he was deprived of his Sixth Amendment right to counsel during his trial in Ohio state court. At Glass's request, the state trial court permitted him to represent himself, which the Sixth Amendment allows if a defendant waives his right to counsel knowingly, intelligently, and voluntarily. Glass contends that the trial court did not conduct a sufficient inquiry to determine whether he understood the nature of the charges against him, the reasons why self-representation might be harmful, and the punishments he might face. Because the Supreme Court has not required trial courts to ask a particular set of questions and the record reflects a basis for concluding that Glass understood the charges and potential punishments he faced, as well as the risks of self-representation, we conclude that the state court's determination that Glass properly waived his right to counsel was not unreasonable and **AFFIRM** the denial of the writ of habeas corpus.

### I. BACKGROUND

**A. Proceedings Before the Franklin County Common Pleas Court**

On September 12, 2008, Glass was indicted on charges of pandering sexually oriented matter involving a minor, and illegal use of a minor in nudity-oriented material or performance. *See* R. 5-1 (Indictment) (Page ID # 51–59). He was alleged to have possessed photographs of himself having sex with three different females who were sixteen or seventeen years old at the time the photographs were taken, and to have shown those .photographs to at least one other person. Although it was

not illegal in Ohio for Glass, an adult, to have sex with a sixteen or seventeen year old, Ohio Rev.Code § 2907.04(A), it was illegal to photograph such activity or publish such photographs, Ohio Rev.Code § 2907.322(A)(1), and to "transfer" such photographs, Ohio Rev.Code § 2907.323(A)(1).

Before a lawyer was appointed to represent him, Glass filed a pro se motion to dismiss, along with requests for a bill of particulars and for discovery. *See* R. 5–1 (Mot. to Dismiss) (Page ID # 61–62); R. 5–1 (Tenth Appellate District Decision at 15) (Page ID # 368). Trial was initially scheduled to begin on January 25, 2010. That morning, Glass's attorney, Joseph Scott, indicated that Glass wished to represent himself. *See* R. 5–2 (Tr. of Jan. 25, 2010 Proceedings at 13:8–14) (Page ID # 650). The trial court engaged Glass in the following colloquy:

> THE COURT: ... Is it my understanding that you wish to proceed and represent yourself? I don't think you are qualified to represent yourself. It's my understanding you have no legal education; is that correct?
>
> THE DEFENDANT: That is correct, your Honor.
>
> THE COURT: How far did you go in college?
>
> THE DEFENDANT: I have never attended college.
>
> THE COURT: You've never been in college?
>
> THE DEFENDANT: No, your Honor.
>
> THE COURT: How far did you go in school?
>
> THE DEFENDANT: Twelfth.
>
> THE COURT: Did you graduate from high school?
>
> THE DEFENDANT: I did, your Honor.

> THE COURT: My feeling is, and that is the reason I appointed Mr. Scott, because he's well-educated with these kind of matters, professionally trained. And I think it would be a dire mistake for you to represent yourself, or attempt to represent yourself in these matters. Do you understand what I'm saying?
>
> THE DEFENDANT: Yes, your Honor.

*Id.* at 14:25–15:22 (Page ID # 651–52). The colloquy resumed later during that hearing:

> THE COURT: Do you understand, Mr. Glass, if I were to do that, that you are bound by the same rules as a lawyer? And you are not—you just indicated to me a few minutes ago that you are not trained as a lawyer, but you understand that you'd be bound by the same rules as a lawyer as far as evidentiary matters, objections that may be made by the State. And I'm concerned that you don't have that background and knowledge to do that.
>
> THE DEFENDANT: I do not, your Honor.
>
> THE COURT: And you understand my concern?
>
> THE DEFENDANT: I do, your Honor.
>
> THE COURT: So you're asking to assume that responsibility, but you don't have the background?
>
> THE DEFENDANT: That is correct, your Honor.
>
> THE COURT: Don't you think that is a bit of—it's more than a challenge?
>
> MR. SCOTT: He has indicated to me he has tried cases before; is that correct?
>
> THE DEFENDANT: I have, your Honor.
>
> THE COURT: I don't know what kind of cases those were or those may have been, but these are 18 counts of very serious allegations. And you tell me what you would prefer to do, Mr. Glass.

THE DEFENDANT: What I would prefer to do is to have Mr. Scott represent me and I act as a co-counsel to be able to address the Court, the jury or the witnesses.

THE COURT: I will permit you to do that, Mr. Glass, with the understanding that I am told in advance who's going to be doing what, okay?

*Id.* at 26:25–28:5 (Page ID # 663–65).

The Court began voir dire, *id.* at 40:25 (Page ID # 677), but the government reindicted Glass on the same charges, in order to extend the time period applicable to the pandering charges. *See* R. 5–2 (Tr. of Jan. 27, 2010 Proceedings at 59:17–60:8) (Page ID # 696–97). The trial court set a new trial date of March 10, 2010. *See id.* at 67:16–18 (Page ID # 704).

On March 10, 2010, the court revisited the issue of Glass's self-representation:

THE COURT: Okay. I think you should listen carefully [to] what the Court has said, not only today, but on a previous occasion, that it would be, in my judgment, in your best interest that you permit the professional, Mr. Scott, to represent you in these matters. He is the one that has been—he is prepared, he is educated, and he's been doing this for a number of years. And it would be like the Court trying to perform surgery on himself. It just doesn't work very well. You ought to listen closely to what your counsel has to say. And I have confidence that Mr. Scott will effectively represent your interest in these matters. And the Court urges you to listen carefully to your counsel.

* * *

THE COURT: How do you wish to proceed?

THE DEFENDANT: I would like to—I would like to act as my attorney.

THE COURT: You wish to represent yourself?

THE DEFENDANT: I do, if it is all right with the Court.

R. 5–2 (Tr. of Mar. 10, 2010 Proceedings at 88:7–89:6) (Page ID # 725–26). The Court returned to the issue later that day:

THE COURT: You realize I will hold you to the same standard that I would hold Mr. Scott and as well as Ms. Russo. And you realize that there are certain rules that every lawyer must abide by, and I just assume that you are aware of those.

THE DEFENDANT: Yes, your Honor.

THE COURT: And there is no different standard. You understand that.

THE DEFENDANT: Yes, your Honor.

* * *

THE COURT: Okay. My concern is that you are not familiar with the rules and the procedures. And that you are doing a disservice to yourself.

THE DEFENDANT: Yes, your Honor.

THE COURT: You acknowledge that?

THE DEFENDANT: I acknowledge that, yes, your Honor.

THE COURT: And you still intend to—or not intend, but you wish to represent yourself?

THE DEFENDANT: I would like to.

THE COURT: May I have an explanation for that, please?

THE DEFENDANT: I think that it's a better choice.

* * *

THE DEFENDANT: I think the case would be better for me if I were to try it for myself.

THE COURT: You understand that you're held to the same standard as the other lawyers?

THE DEFENDANT: Yes, your Honor.

THE COURT: I will permit Mr. Scott to sit at the table, but you'll have to conduct the trial then on your behalf.

THE DEFENDANT: Yes, your Honor.

* * *

THE COURT: If Mr.—I find that Mr.—and that's the reason I asked Mr. Glass these questions. He's acknowledged to me that he's now making this decision knowingly, intelligently and voluntarily, and that this is a decision he wishes to make. And he's consulted with Mr. Glass, and Mr. Scott has consulted with Mr. Glass on numerous occasions.

And I just want to reiterate, Mr. Glass, that if through this process, you decide I just can't do it, you've made that decision, I want to make sure you understand that this is your decision and your decision alone. And that's the reason I have given you every opportunity to speak with Mr. Scott because, quite frankly, I think you're making the wrong decision. And I have to believe that Mr. Scott believes you are making the wrong decision.

THE DEFENDANT: Yes, your Honor.

THE COURT: And I am sure that is what he's told you, without going into any conversations you have had with him.

THE DEFENDANT: Yes, your Honor.

*Id.* at 93:12–96:14 (Page ID # 730–33).

Trial commenced, with Glass giving the opening and closing statements and conducting all examination of witnesses. The jury found Glass guilty of fourteen of the counts against him and not guilty of four counts. *See* R. 5–1 (Verdict Forms) (Page ID # 185–202). Glass was represented by Scott during his May 19, 2010 sentencing, R. 5–2 (Tr. of May 19, 2010 Sentencing at 9:16–17) (Page ID # 1358), and was sentenced to a total of seven years of imprisonment. *See* R. 5–1 (Judgment Entry) (Page ID # 230–33).

## B. Appellate Proceedings Before the Ohio State Courts

Glass appealed his conviction to the Tenth District Court of Appeals. He argued, among other things, that the trial court erred in "fail[ing] to adequately question and inquire of [Glass] as to whether he fully understood and intelligently relinquished his right to counsel." R. 5–1 (Glass Br. at 14) (Page ID # 280).

The Tenth District affirmed Glass's conviction on December 8, 2011, in a 2–1 decision. *See* R. 5–1 (Tenth District Decision) (Page ID # 354–79). The court noted that "the United States Supreme Court has not prescribed a precise formula or script that must be read to a defendant who indicates that he desires to proceed without counsel" and "[i]nstead, to be valid, a waiver of the right to counsel must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.* at 12 (Page ID # 365). The Tenth District found that Glass was sufficiently informed because: (1) "despite being given repeated warnings about the dangers of self-representation, appellant displayed no confusion about wanting to proceed without counsel," *id.* at 13 (Page ID # 366); (2) Glass had filed pro se motions, including "a motion to dismiss, a request for discovery, and a request for bill of particulars," the contents of which "demonstrate[d] an appreciation and understanding of the legal process as it pertains to the matter herein," and Glass later directed Scott to file other motions, *id.* at 15–16 (Page ID # 368–69); (3) Glass ar-

gued his own motion regarding selective prosecution, stating his basis for believing that others had committed the same statutory offense, which "demonstrate[d] an understanding of the law upon which he was charged," *id.* at 16 (Page ID # 369); (4) Glass "provided Scott with a witness list naming 35 persons, and ... discussed discovery that he thought 'would be helpful,'" *id.;* and (5) "Scott had 'gone over the previous indictment'" with Glass, *id.* Finally, the court noted that "the record itself is devoid of any discussion regarding the range of potential sentences," but "does indicate that two different plea offers were extended to appellant and put on the record, and, appellant confirmed he was 'not interested' in them," making "it proper ... to presume that when discussing the plea offers, appellant's counsel discussed with him the range of allowable punishments." *Id.* at 17 (Page ID # 370).

Judge Klatt dissented, arguing "that the trial court failed to make any inquiry to assess appellant's level of knowledge and understanding prior to accepting his waiver of [the] right to counsel." *Id.* at 22 (Page ID # 375). Judge Klatt explained that "[a]lthough the trial court clearly and repeatedly warned appellant of the dangers of representing himself, the trial court made no inquiry of appellant's understanding of the nature of the charges, possible penalties, or potential defenses before appellant waived his right to counsel." *Id.* at 23 (Page ID # 376). Judge Klatt also declined to presume that Glass had obtained the necessary information from his trial counsel. *See id.* at 24–25 (Page ID # 377–78).

Glass appealed to the Ohio Supreme Court, which "denie[d] leave to appeal and dismisse[d] the appeal as not involving any substantial constitutional question." R. 5–1 (July 25, 2012 Order) (Page ID # 463).

## C.  Federal Habeas Proceedings

On March 26, 2013, Glass filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, raising the trial court's alleged failure to establish whether his decision to represent himself was knowing and voluntary. *See* R. 1 (Petition at 16–17) (Page ID # 16–17). The petition was referred to a Magistrate Judge, who recommended that it be denied. *See* R. 13 (Report and Recommendation) (Page ID # 1414–37). The Magistrate Judge found the state court's decision that Glass was sufficiently informed about the nature of the case and risks of self-representation to be reasonable. *See id.* at 16–23 (Page ID # 1429–36). Glass objected to the Magistrate Judge's report and recommendation, but the district court overruled those objections, adopted the report and recommendation, and dismissed the petition. *See* R. 17 (Opinion) (Page ID # 1456–59). Glass timely appealed. *See* R. 19 (Notice of Appeal) (Page ID # 1461–62).

## II.  ANALYSIS

### A.  Standard of Review

"We review the district court's legal conclusions in habeas proceedings de novo and its findings of fact for clear error." *Akins v. Easterling,* 648 F.3d 380, 385 (6th Cir. 2011) (quoting *Braxton v. Gansheimer,* 561 F.3d 453, 457 (6th Cir.2009)). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs our review of Glass's petition, provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreason-

able application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). We "give independent meaning to both the 'contrary to' and 'unreasonable application' clauses of the statute." *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The Supreme Court has explained that "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Id.* at 405–06, 120 S.Ct. 1495. Furthermore, the Supreme Court holds that "a state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall,* —— U.S. ——, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter,* 562 U.S. 86, 101, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). Indeed, AEDPA's standard " 'is difficult to meet.' " *Woodall,* 134 S.Ct. at 1702 (quoting *Metrish v. Lancaster,* —— U.S. ——, 133 S.Ct. 1781, 1786, 185 L.Ed.2d 988 (2013)). A state-court decision "must be 'objectively unreasonable,'

not merely wrong; even 'clear error' will not suffice." *Id.* (quoting *Lockyer v. Andrade,* 538 U.S. 63, 75–76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)).

### B. Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right encompasses the right to self-representation:

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.' Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

*Faretta v. California,* 422 U.S. 806, 819–20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting U.S. Const. amend. VI). Although a defendant has the right to self-representation, the act of exercising that right is, by definition, an intentional relinquishment of the right to assistance of counsel. *See King v. Bobby,* 433 F.3d 483, 490 (6th Cir.2006) ("When a defendant invokes one, he necessarily waives the other."), *cert. denied,* 549 U.S. 1001, 127 S.Ct. 506, 166 L.Ed.2d 379 (2006). Accordingly, "a defendant's decision to represent himself—and thereby waive counsel—must be knowingly and voluntarily made." *Hill v. Curtin,* 792 F.3d 670, 677 (6th Cir.2015)

(en banc), *cert. denied,* —— U.S. ——, 136 S.Ct. 593, 193 L.Ed.2d 470 (2015). "'[C]ourts indulge every reasonable presumption against waiver' of fundamental constitutional rights, and ... 'do not presume acquiescence in the loss of fundamental rights.'" *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (quoting *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); *Ohio Bell Tel. Co. v. Pub. Utilities Comm'n,* 301 U.S. 292, 307, 57 S.Ct. 724, 81 L.Ed. 1093 (1937)). The issue in this case is whether the Ohio courts came to a decision that was contrary to or an unreasonable application of Supreme Court precedent when they determined that Glass had validly waived his right to counsel.

It is clearly established that a defendant seeking to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. U.S. ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). This includes the need to establish that a defendant understands "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309 (1948).

To determine whether the appropriate awareness exists, "a judge must investigate as long and as thoroughly as the circumstances of the case before him demand." *Id.* at 723–24, 68 S.Ct. 316; *see*

*also Hill,* 792 F.3d at 677 ("Because the dangers and disadvantages of self-representation during trial are so substantial, an accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made 'searching or formal inquiry' to ensure that his waiver is knowing, intelligent, and voluntary.") (quoting *Patterson v. Illinois,* 487 U.S. 285, 292 & n. 4, 298–300, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988)). But the Supreme Court "ha[s] not ... prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election ... will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar,* 541 U.S. 77, 88, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004). Indeed, the inquiry "is whether [petitioner's] waiver was knowing and voluntary," so we look to "what the defendant understood—not what the court said or understood." *Akins,* 648 F.3d at 398 (quoting *United States v. Erskine,* 355 F.3d 1161, 1169–70 (9th Cir. 2004)). And "the burden of proof rests upon [the defendant] to establish that he did not competently and intelligently waive his constitutional right to assistance of Counsel." *Johnson,* 304 U.S. at 468–69, 58 S.Ct. 1019; *see also Akins,* 648 F.3d at 395.

Glass believes that only a "review[of] the nature of the charges, including the statutory offenses" as well as "the possible punishment, defenses, or mitigation, or other information for Mr. Glass to have a broad understanding of his case and the import of his waiver" would have been sufficient. Appellant Br. at 20–21. "[T]he trial court," he argues, "warned Mr. Glass re-

peatedly that it disagreed with his decision, and that he did not have the legal training required to properly try a case, but it never discussed what that meant." *Id.* at 19.

The trial court's inquiry, however, was not so limited. In January 2010, the trial court established that Glass had no legal education, and not only expressed disagreement with his decision to proceed *pro se*, but explained why, stating that Glass would be "bound by the same rules as a lawyer as far as evidentiary matters" and the court was "concerned that you don't have the background and knowledge to do that." R. 5–2 (Tr. of Jan. 25, 2010 Proceedings at 27:1–11) (Page ID # 664). The trial court further expressed that this would make representation "more than a challenge" and stressed that Glass faced "18 counts of very serious allegations." *Id.* at 27:12–22 (Page ID # 664). The trial court reiterated similar concerns before beginning trial in March 2010, explaining that Glass's lawyer "is prepared, he is educated, and he's been doing this for a number of years," while Glass representing himself "would be like the Court trying to perform surgery on himself." R. 5–2 (Tr. of March 10, 2010 Proceedings at 88:12–15) (Page ID # 725). The trial court again emphasized that Glass would be held "to the same standard" as the other lawyers in the case, *id.* at 93:12–20 (Page ID # 730), and expressed its "concern ... that you are not familiar with the rules and the procedures" and would therefore be "doing a disservice to yourself," *id.* at 94:1–3 (Page ID # 731). Yet Glass remained steadfast in his desire to represent himself. This is not a case, then, where the trial court's colloquy left only a minimal record from which to assess the defendant's understanding of the risks of self-representation.

Nor are we limited to the trial court's colloquy in assessing the validity of Glass's waiver. We look to the entire record, as the state court did in this case, for "it is a reasonable application of *Faretta* and *Von Moltke* to look at the whole record." *King,* 433 F.3d at 492. The record reflects that Glass had some understanding of the case and the charges against him. He had himself litigated issues that demonstrated an understanding of the charges against him, their statutory basis, and the legal process. *See* R. 5–1 (Tenth District Decision at 15) (Page ID # 368) (describing Glass's 2008 pro se filings, the "substance" of which "demonstrates an appreciation and understanding of the legal process as it pertains to the matter herein"); *id.* at 16 (Page ID # 369) (noting Glass's subsequent direction that Scott "file a number of pretrial motions"); R. 5–2 (Tr. of Jan. 25, 2010 Proceedings at 36:19–37:9) (Page ID # 673–74) (Glass's argument regarding selective prosecution, which described his belief that other individuals "who are saying that they took pictures of each other and myself" and another "who is stating that he knowingly took these pictures and knowingly transferred them onto another computer" were not being prosecuted, even though, Glass asserted, they "committed the same offense or could fall into under [sic] the statute"). Glass's involvement with Scott also demonstrated some additional understanding of the charges and, to an extent, the potential punishment. *See* R. 5–1 (Tenth District Decision at 16–17) (Page ID # 369–70) (discussing the fact that Scott and Glass had discussed the original indictment, and Scott had rejected plea offers). Finally, Glass had some understanding of the amount of prison time he might be facing. While cross-examining one of the victims, Glass began to ask "[d]o you know that I will get eight—" at which point the government

objected to Glass's attempt to get before the jury his possible punishment of eight years incarceration. *See* R. 5-2 (Tr. of March 12, 2010 Proceedings at 417:13–418:1) (Page ID # 1056–57).[1]

We have held that an AEDPA petitioner fails to meet his burden when the record does not contain affirmative evidence of his ignorance of the potential sentence, even in the absence of a colloquy establishing such knowledge. *See Akins,* 648 F.3d at 399. Glass's apparent understanding regarding a potential sentence he might face—revealed days after his decision to represent himself—arguably exceeds this level of awareness. Furthermore, although the trial court did not engage in an exhaustive colloquy with respect to Glass's understanding of the punishment he might face and the elements of the statutory charges, it did convey the reasons why self-representation was risky. Finally, the record reflects a basis for the state-court majority's finding that Glass had an independent understanding of the charges against him and their statutory elements. Even assuming that Judge Klatt—who dissented from the Ohio Court of Appeals's affirmance of Glass's conviction—was correct that the trial court's inquiry was insufficient because that court did not ask questions necessary to confirm Glass's understanding of the range of punishments he might face, the full scope and statutory elements of the charges against him, and the potential defenses to those charges, we cannot conclude on this record that the state court's application of the Supreme Court's *Faretta* line of cases was unreasonable.

1. Because the record reflects some basis for finding that Glass had knowledge regarding the punishment he might face, we do not rely upon any presumption that Scott may have provided Glass with additional information regarding the nature of the charges or the possible punishment during the course of Scott's representation of Glass. *See* Appellee Br. at 19.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Glass's habeas petition.